# Illinois Official Reports

## Appellate Court

***People v. King*, 2014 IL App (2d) 130461**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID M. KING, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0461 |
| Filed | November 17, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution of defendant for driving under the influence of alcohol and causing his tires to squeal, the trial court did not err in admitting the testimony of the arresting officer regarding his attempt to administer the HGN test, notwithstanding defendant's contention that the officer's testimony did not satisfy the foundational requirements set forth in *McKown II*, since that decision does not bar an officer from testifying about his incidental observations while administering the test to the extent that the observations are independently relevant and there is no reason to link the admissibility of such evidence to the foundational requirements applicable to the test. |
| Decision Under Review | Appeal from the Circuit Court of Boone County, Nos. 09-DT-78, 09-TR-3264; the Hon. John H. Young, Judge, presiding. |
| Judgment | Affirmed as modified. |

Counsel on
Appeal

Thomas A. Lilien and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

Michelle J. Courier, State's Attorney, of Belvidere (Lawrence M. Bauer and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Jorgensen and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1 Following a jury trial in the circuit court of Boone County, defendant, David M. King, was found guilty of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2008)) and causing the tires of his vehicle to squeal (625 ILCS 5/11-505 (West 2008)). For DUI, the trial court sentenced defendant to 12 months' conditional discharge and ordered him to serve five days in the Boone County jail and pay, *inter alia*, a fine of $1,300. The trial court placed defendant on court supervision for causing his vehicle's tires to squeal. Defendant argues on appeal that the trial court erred in admitting testimony concerning the arresting officer's attempt to administer the horizontal gaze nystagmus (HGN) test to defendant. Defendant also argues that he is entitled to monetary credit toward his fines for time spent in custody prior to sentencing. We affirm as modified.

¶ 2 At trial, Chris Washburn, an officer with the Belvidere police department, testified that, in the early morning hours of March 21, 2009, he observed a silver Chevy van stopped on northbound Appleton Road at its intersection with Lincoln Avenue. There was a traffic signal at that intersection. Washburn was traveling south on Appleton Road, approaching the intersection. The traffic signal was green for southbound traffic and Washburn believed that it would have been green for northbound traffic as well. Washburn slowed down in an effort to determine why the van was not moving. Washburn then saw the van lurch forward, and he heard its tires squeal. The van turned right onto Lincoln Avenue. Washburn followed the van as it proceeded a short distance on Lincoln Avenue, turned left onto Whitman Street, and pulled into a residential driveway. Washburn parked his vehicle, activated the emergency lights, and walked up to the van. The parties stipulated that defendant was driving the van at the time.

¶ 3 According to Washburn, defendant exited the vehicle and "took a couple of steps that were unsteady." Washburn also noticed that defendant's eyes were red, his eyelids were drooped, and his speech was very slurred. Washburn asked defendant to produce his driver's license and proof of insurance. Defendant complied. Washburn did not detect the odor of alcohol emanating from defendant. He noted, however, that he was suffering from allergy symptoms that prevented him from smelling anything. Washburn asked defendant why he had caused the

tires on his vehicle to squeal. Defendant responded that the vehicle was peppier than the truck that he usually drove. Defendant stated that he had just proposed to his girlfriend. He also indicated that he had consumed a couple of beers but was not drunk.

¶ 4 Washburn testified that he had been trained to administer field sobriety tests and that he was also certified to train other officers to administer the tests. Washburn asked defendant to perform field sobriety tests and defendant agreed. Washburn initially conducted the HGN test. He instructed defendant to look at his (Washburn's) finger and follow it with his eyes without moving his head. According to Washburn, defendant moved his head while following Washburn's finger. The prosecutor asked Washburn what he noticed while holding his finger out to the side of defendant's head. As Washburn began to answer, defendant's attorney objected that there was "no foundation laid for the administration of this test." The trial court overruled the objection, but directed the prosecutor to rephrase the question. The prosecutor then asked whether defendant was following Washburn's instructions when Washburn held his finger to the side of defendant's head. Washburn responded that defendant initially followed his finger without moving his head, but then looked straight at Washburn. The next time Washburn moved his finger, defendant moved his head.

¶ 5 Washburn administered two other field sobriety tests: the walk-and-turn test and the one-leg-stand test. Washburn instructed defendant that, for the walk-and-turn test, he was to place his left foot behind his right, take nine heel-to-toe steps with his arms at his sides, turn around, and take nine heel-to-toe steps back. Washburn demonstrated to defendant how he should walk and turn. Washburn instructed defendant to stand heel-to-toe with his left foot behind his right and his arms at his sides during the demonstration. Washburn testified that defendant raised his arms slightly and did not maintain the heel-to-toe stance. When defendant actually performed the test, he lost his balance twice while walking. Each time, he raised one of his arms more than six inches away from his body.

¶ 6 For the one-leg-stand test, Washburn instructed defendant initially to stand with his heels and toes touching and his hands by his sides, to raise one foot about six inches off of the ground, to keep his foot parallel to the ground, and to count out loud until told to stop. Defendant raised his foot, placed it back on the ground, and then raised it again, at which point he began swaying and started to hop. Defendant leaned over to one side and raised one arm more than six inches from his side. Defendant then placed his foot on the ground and stated that he could not perform the test.

¶ 7 After Washburn testified about defendant's attempt to perform the one-leg-stand test, defendant's attorney asked the trial court "to disregard the testimony of the officer regarding [defendant] supposedly moving his head during the eye test because that is only relevant in the context of a [HGN] test." Defense counsel argued that "[s]ince there was no proper foundation laid for the administration of a [HGN] test because there was no other testimony regarding the HGN test, the alleged movement of [defendant's] head is irrelevant." The trial court overruled the objection, stating that the prosecutor "didn't go into HGN."

¶ 8 Washburn's squad car was equipped with a video camera, which recorded Washburn's encounter with defendant. The recording was played for the jury and admitted into evidence. Washburn testified that it was his opinion that defendant was under the influence of alcohol and was not fit to drive a motor vehicle at the time in question. Washburn acknowledged that, other than squealing his tires, defendant did not violate any traffic law and did not drive erratically.

¶ 9    Defendant contends that, because there was no foundation for testimony concerning the administration of the HGN test, the trial court erred in allowing Washburn to testify on that subject. Our supreme court has provided the following useful summary of the principles and procedures involved in HGN testing:

> "The HGN test purportedly measures nystagmus, which has been defined as an abnormal and involuntary rapid movement of the eyeballs up and down, or more commonly, side to side. [Citation.] Many people will exhibit some nystagmus, or jerking, as their eyes track to the extreme side. However, with an intoxicated person, the onset of the nystagmus, or jerking of the eyeball, occurs after fewer degrees of lateral deviation from center, and the jerking is more pronounced at extreme angles. While nystagmus is an indication of alcoholic consumption, it is also a symptom of many other ailments. [Citation.]
>
> Because alcohol consumption can cause nystagmus, police officers have been trained to check a person's eye movements when attempting to determine if a driver has been driving while impaired by alcohol. The National Highway Traffic Safety Association's (NHTSA) DWI Detection and Standardized Field Sobriety Testing Instructor Manual sets forth the procedure for administering an HGN test in the field. First, the officer is required to ask the subject if he or she wears contact lenses or has any medical impairment that would affect the test results or prohibit the subject from taking the test. If the subject claims to wear hard contacts, or have natural nystagmus or any other condition that may affect the test results, the officer should note the condition but still administer the test if possible. [Citation.]
>
> After these preliminary questions, the officer asks the subject to focus on an object, such as a pen, held just above eye level, about 12 to 15 inches from the subject's nose, and to follow the object as the officer gradually moves it from side to side.
>
> While conducting the test, the officer looks for six nystagmus 'clues,' three in each eye, that, according to the NHTSA Manual, indicate impairment. If four or more clues are present, the subject is determined to have failed the test and be impaired. The clues are (1) lack of smooth pursuit; (2) distinct nystagmus at maximum deviation, meaning any nystagmus exhibited when the eyeball is looking as far to the side as possible; and (3) angle of onset of nystagmus prior to 45 degrees, meaning any nystagmus that occurs before the object reaches a point that the officer determines to be 45 degrees from the center of the suspect's face. No measuring apparatus is used in the 45-degree test. The officer is then instructed to have the subject perform the walk-and-turn field-sobriety test and the one-leg-stand field-sobriety test, compile the results of the three tests, and then make the decision whether to arrest the subject." *People v. McKown*, 226 Ill. 2d 245, 248-50 (2007) (*McKown I*).

¶ 10   In *McKown I*, our supreme court held that testimony concerning the administration and results of the HGN test was scientific evidence, the admissibility of which depended upon a threshold showing, under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), that "HGN testing had been generally accepted as a reliable indicator of alcohol impairment" (*McKown I*, 226 Ill. 2d at 247). The *McKown I* court remanded the case to the trial court for a hearing to determine whether HGN testing satisfied that standard (*id.* at 276-77), but retained jurisdiction to review the trial court's finding and to determine whether the admission of HGN evidence at the defendant's trial had been proper. *Id.* After the completion of the proceedings on remand,

our supreme court held that "evidence of HGN field-sobriety testing, when performed according to the NHTSA protocol by a properly trained officer, is admissible under the *Frye* test for the purpose of showing whether the subject has likely consumed alcohol and may be impaired." *People v. McKown*, 236 Ill. 2d 278, 306 (2010) (*McKown II*).

¶ 11    Defendant contends that Washburn's testimony was insufficient to establish that he was properly trained to administer the HGN test or that he administered the test according to NHTSA protocol. Thus, according to defendant, Washburn's testimony did not satisfy the foundational requirements set forth in *McKown II*. That might be true, but *McKown II* cannot reasonably be understood to apply to the type of testimony at issue in this case. Washburn never testified that he formed any opinions based the movement of defendant's *eyes*. Thus, it is of no moment that Washburn might not have been properly trained–and might not have followed the proper procedures–to elicit eye movement indicative of the consumption of alcohol. Washburn merely related an incidental observation while he administered the HGN test–that defendant moved his head despite being instructed to keep it still. Nothing in the *McKown* decisions bars an officer from relating such observations, to the extent that they are independently relevant, and there is no sensible reason to link the admissibility of such evidence to the foundational requirements for the HGN test itself.

¶ 12    We agree with the State that a motorist's failure to follow an officer's directions during a traffic stop is relevant to the question of whether the motorist is impaired. More importantly, a motorist's failure to follow directions on a particular field sobriety test does not lose all relevance simply because the test might not have been designed for the precise purpose of gauging the ability to follow directions. Furthermore, we reject defendant's suggestion that Washburn's incidental observation while administering the HGN test was somehow tantamount to conducting an *ad hoc* field sobriety test.

¶ 13    We note that defendant appears to suggest that the jury might have assumed that his failure to keep his head still during the HGN test was a formal "clue" to impairment, rather than an incidental observation. In other words, the jury might not have understood that the HGN test did not yield any conclusive result. Be that as it may, when the evidence was offered, defendant objected only to the lack of foundation. When a party objects to evidence at trial on specific grounds, he or she forfeits other possible grounds for objecting. *People v. Bryant*, 391 Ill. App. 3d 1072, 1078 (2009). More importantly, because defendant has framed the issue in this appeal as whether there was a foundation for the testimony in question, we have no occasion to consider other possible grounds for objection. However, our ruling today does not imply that, where the State is aware that the HGN test was not conducted properly and, thus, that the results are inadmissible, the officer's otherwise relevant and material observations can or should be characterized as *part of the administration* of an HGN or other field sobriety test.

¶ 14    Defendant also contends that the prosecutor "more than arguably" violated an oral order *in limine*. Just prior to jury selection, defendant's attorney moved *in limine* for a ruling that "when [Washburn] gives his opinion regarding the HGN, *** he cannot say that defendant was impaired." Defendant argued that, under the *McKown* decisions, the HGN test could be the basis for an opinion only on whether a motorist had consumed alcohol. The State had no objection and the trial court granted the motion. Defendant contends that, during closing argument, the State circumvented the ruling by arguing that defendant's failure to follow instructions on the HGN test was evidence of impairment. We disagree. Defendant does not suggest that the State violated the letter of the trial court's ruling. Nor, in our view, can it be

said that the State violated the spirit of the ruling, which was to limit the scope of *scientific* evidence introduced by the State. Evidence that defendant failed to follow instructions during the HGN test does not fall into that category and the prosecutor's argument was a fair comment on the evidence.

¶ 15    Defendant next argues that he is entitled to monetary credit toward his fines based on the time he spent in custody prior to sentencing. Section 110-14(a) of the Code of Criminal Procedure of 1963 provides:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110-14(a) (West 2008).

A defendant may apply for the credit for the first time on appeal. *People v. Caballero*, 228 Ill. 2d 79, 88 (2008). It is undisputed that defendant spent one day in custody. He is therefore entitled, as the State concedes, to a credit of $5 toward his fines.

¶ 16    For the foregoing reasons, we affirm defendant's conviction and sentence, but modify the mittimus to reflect a $5 credit against defendant's fines.

¶ 17    Affirmed as modified.