# Illinois Official Reports

## Appellate Court

***People v. Tatera*, 2018 IL App (2d) 160207**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL G. TATERA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0207 |
| Filed<br>Rehearing denied | May 15, 2018<br>June 11, 2018 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 12-CF-1122; the Hon. Sharon L. Prather, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and James K. Leven, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Patrick D. Kenneally, State's Attorney, of Woodstock (Patrick Delfino, Lawrence M. Bauer, and Steven A. Rodgers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson and Justice Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1     Following a brief jury trial in the circuit court of McHenry County, defendant, Michael G. Tatera, was convicted of the offense of aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2), (d)(1)(A) (West 2012)), and he was sentenced to an eight-year term of imprisonment. Defendant appeals, arguing that (1) the evidence was insufficient to convict him of the offense beyond a reasonable doubt, (2) the trial court erred in allowing the jury to view a part of the video of defendant's arrest that depicted an improperly conducted field sobriety test, (3) the State shifted the burden of proof in its rebuttal closing argument, and (4) the trial court improperly used a double enhancement in fashioning his sentence. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     We summarize the pertinent facts appearing in the record. Officer Rich Kresen of the Spring Grove Police Department, the sole witness presented at trial, testified that, on October 6, 2012, at about 8:57 p.m., he was on duty in a marked police car. The car's video-recording system was on and operating. The audio-recording system was partially working; the microphone inside the cabin of the car was fully working, but Kresen's body microphone was not functioning. Kresen's car was parked on the side of the road, facing east, at the intersection of Main Street and Blivin Road in Spring Grove. At that time, Blivin Road was completely blocked due to a large hole that opened in the westbound lane. The blockade of Blivin Road extended from Main Street to Lorraine Street. A number of orange and white reflective barricades had been erected around the hole, along with barricades marked with signs indicating "road closed to through traffic."

¶ 4     At 8:57 p.m., Kresen observed a car traveling west on Blivin Road, through the blocked portion of the road. As the car approached, Kresen observed it exit the westbound lane into the eastbound lane to avoid the large hole and its surrounding barricades. Kresen testified that the car did not strike any of the barricades or cones that had been emplaced. Once the car reached the corner of Blivin Road and Main Street, it turned right. The car came to a full stop before it entered northbound traffic on Main Street. Kresen followed the car.

¶ 5     As Kresen followed the car, he did not see it weave or cross either the center line or the fog line of the road. Kresen activated his emergency lights and shined his spotlight on the car to indicate that it should pull over. After up to 10 seconds, the driver turned on the car's right signal light and pulled to the side of the road. The car did not drive into the ditch at the side of the road; it smoothly pulled to a stop, straddling the fog line, with its right-side tires on the gravel shoulder and parallel with the fog line.

¶ 6     Kresen identified defendant in court as the person who was driving the car. (When Kresen made the identification, defendant, apparently in jest, pointed at one of his lawyers.) Kresen testified that, when he approached the vehicle, he detected a moderate odor of an alcoholic beverage. Defendant produced his Wisconsin driver's license without any fumbling or difficulty. Kresen asked defendant where he was going and defendant stated, "Wisconsin." Kresen asked defendant where he was coming from, and he again stated, "Wisconsin." Kresen said to defendant that his answers did not make any sense. Defendant then informed Kresen that he was lost and was just trying to make it home. Kresen informed defendant that he was in Illinois.

¶ 7        During the exchange, Kresen observed that defendant's eyes were "glassy." Based on defendant's driving through the closed road, the appearance of his eyes, and the odor of alcohol, in light of his training and experience, Kresen suspected that defendant might be under the influence of alcohol. Kresen asked defendant if he had had anything to drink, and defendant denied that he had. Kresen asked defendant to get out of his car, and defendant complied. As he exited his car, defendant did not stumble or hold onto the car. He walked to the front of Kresen's squad car with no apparent difficulties.

¶ 8        Kresen told defendant to stand with his feet together and his hands at his sides. At first, defendant complied, but then he seemed to shrug and placed his hands in his pockets. Kresen again directed defendant to place his hands at his sides. Kresen testified that it was a cool October evening, and when asked if it had been "cold," he emphasized that it was "cool." The recording did not appear to show that either Kresen's or defendant's breath was steaming in the night air. After being directed for the second time to place his hands at his sides, defendant briefly complied, again appeared to shrug, and again placed his hands in his pockets. Kresen testified that, based on these actions, he concluded that defendant was not following his instructions. Kresen also testified that, as this interaction in front of the squad car was taking place, he continued to smell a moderate odor of alcohol on defendant's breath.

¶ 9        Kresen testified that he sought to conduct field sobriety tests to assess defendant's balance and ability to follow instructions. In particular, Kresen explained, he was attempting to have defendant perform the one-leg-stand test. Kresen explained that it simulates a divided-attention task, such as driving a car, because the subject is required to balance on one foot while reciting a string of numbers in a particular fashion. According to Kresen, he instructed defendant to stand with his feet together and to place his arms at his sides. Kresen testified that defendant did not initially follow these instructions because he once again placed his hands in his pockets. After another instruction to remove his hands from his pockets, Kresen then instructed defendant to raise one foot (defendant's choice as to which foot) about six inches with the toe pointed forward and to count: 1001, 1002, and so on. Kresen then demonstrated the one-leg-stand test for defendant and instructed defendant to begin.

¶ 10       Defendant asked Kresen to explain the test again. Kresen refused, telling defendant that he was not going to explain it again. Kresen testified that he believed that defendant understood the instructions. At this point, defendant became visibly agitated. Kresen testified that defendant exclaimed, "just arrest [me]," and refused to perform any tests. At that point, Kresen decided to arrest defendant. Kresen testified that he made the decision to arrest based on his observation of defendant ignoring the "road closed" signs and driving through a dangerous portion of Blivin Road, defendant's failure to immediately pull over when Kresen activated his flashing lights, defendant's apparent confusion upon the initial questioning, defendant's glassy eyes, the odor of alcohol in the car and on defendant's breath, defendant's failure to follow Kresen's instructions, defendant's failure and refusal to complete the field sobriety tests, and defendant's sudden agitation and argumentativeness when Kresen would not instruct defendant a second time about the one-leg-stand test. When defendant became agitated, refused to perform any tests, and exclaimed, "just arrest [me]," Kresen obliged and placed defendant under arrest. Kresen handcuffed defendant. Defendant was fully compliant with the remaining arrest procedures.

¶ 11       Once defendant was in the car, the cabin microphone picked up defendant sighing, but beyond that, defendant was entirely quiet. Kresen testified that defendant was taken to the

- 3 -

police station, where he was observed for a period of time. During that time, defendant was compliant and quiet; he did not curse or otherwise berate Kresen or the other police officers, and defendant did not fall asleep or ask to use a restroom. Defendant was asked to perform a breath test, but defendant refused.

¶ 12    On cross-examination, Kresen admitted that he did not ask defendant if he had allergies or another illness that could have potentially explained why defendant's eyes were glassy. After placing defendant under arrest, Kresen did not find any open containers of alcohol or any other contraband in the car or on defendant's person.

¶ 13    Following defendant's arrest, he was indicted on two charges of aggravated DUI, with count I alleging a Class X felony because defendant had seven previous convictions of DUI, and count II containing the same allegations but charging a Class 1 felony. Before trial, the State nol-prossed count II.

¶ 14    At trial, after Kresen gave the testimony summarized above, a video of the arrest was published to the jury. In the video, 21 seconds of Kresen's administration of the horizontal gaze nystagmus (HGN) test was redacted. Defendant had filed a motion *in limine* seeking to preclude the entirety of the HGN test on the grounds that Kresen had not properly administered the test. The State agreed that Kresen had not properly administered the test, but it argued that the first portion of the test should nevertheless be admitted and published to the jury because, in that first portion, defendant was seen placing his hands in his pockets, taking them out at Kresen's apparent direction, and then placing them back in his pockets, at which point Kresen apparently did not again instruct defendant to remove them. The trial court agreed that the State could show the jury the first portion of the test to illustrate defendant's behavior and inability to comply with Kresen's instructions. We note that Kresen testified generally about field sobriety tests and never mentioned the HGN test by name or explained any of his actions in conducting the HGN test. The trial court instructed the jury that the video was redacted because "there [was] nothing relevant contained on that portion of the video."

¶ 15    During the State's rebuttal closing argument, the prosecutor remarked:

"That's why they have these DUI evaluations, that's why they send these officers to training, because somebody's not going to simply state 'I'm a drunken mess, arrest me.' Oh, wait a minute, he did say 'go ahead and arrest me.' That's consciousness of guilt.

Don't be blinded by the defense attorney saying he was able to do this, he was able to do that. He didn't show a sign here, he didn't show a sign there. Don't be blinded to the signs that he did show, the obvious signs. We don't know how he would have done on the physical portion of those field sobriety tests, we don't know what his breath alcohol level was, because he refused to do those things. That's called consciousness of guilt. If he wasn't guilty, why didn't he take the test—

[DEFENSE COUNSEL]: Objection, Judge, burden shifting.

THE COURT: Overruled.

[THE STATE]: That's called consciousness of guilt."

¶ 16    Later in the rebuttal closing argument, the prosecutor remarked:

"There is one more decision, though, that you heard about, a decision that's absolutely telling about his consciousness of guilt and that you can infer his consciousness of guilt from, and that's that he refused a breath test at the station.

Remember in your deliberations and use that as one of the factors that you use in finding the defendant guilty. Again, if he wasn't under the influence, why didn't [he] take that simple test? If he wasn't guilty, why did he refuse field sobriety testing? He didn't take that test because he was impaired. When you drink and drive to the point where you're going around barricades, driving into oncoming lanes, have no idea where you are, can't follow simple instructions, yell at an officer, refuse field sobriety testing, tell an officer 'just arrest me' and refuse a breath test, you combine all those factors, you're driving under the influence of alcohol and that's a crime in this state."

The defense attorney did not object to the second set of remarks.

¶ 17 Following the argument, the jury returned a verdict of guilty. Defendant filed a timely posttrial motion seeking a judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied the motion. At the sentencing hearing, defendant spoke in allocution, leading to a colloquy between defendant and the trial court before the trial court pronounced sentence:

"THE DEFENDANT: Just that I'm very sorry that this case is here. That I have a very good support system outside. My family, my fiancée, Deborah. I intended on—I worked as a co-facilitator for a Smart Group from about 2007 to 2010, which I would intend to be going back to doing upon release in Waukesha, Wisconsin, where I live—we were living.

And I can assure the Court that this type of thing will never happen again being that I intend on getting married. We have a house. I intend on settling down and going ahead and doing that. And I am very aware of how serious this is and that it never happens again. Thank you.

THE COURT: Mr. Tatera, sir, do you recognize you have a serious problem with alcohol?

THE DEFENDANT: Yes. Absolutely.

THE COURT: Do you recognize if you don't do something about that, you're never going to be able to live a normal life?

THE DEFENDANT: Yes.

THE COURT: Are you ready to do something about it?

THE DEFENDANT: Absolutely.

THE COURT: Why haven't you done it in the past, sir?

THE DEFENDANT: That's why I was co-facilitating the Smart Group beyond having to by court order or anything by that sort, continued for three years, you know, before work started getting in the way of that.

Now I realize that is something I will continue and stay in because it's something where I keep it foremost in my mind that that is a problem. That's something I can never go back to again.

THE COURT: Mr. Tatera, I don't think anybody in the courtroom [is] arguing that you are a bad person. However, every time you get behind the wheel of an automobile and you are drunk, you are endangering the lives of innocent people that are out on the highway, not only your own life, those of others who [are] out on the road at the same time.

You are extremely fortunate with as many DUIs that you have had that you have not killed somebody yet. Do you recognize that?

THE DEFENDANT: Yes, ma'am. Absolutely.

THE COURT: Do you recognize that your crime does in fact, sir, put others in danger?

THE DEFENDANT: Yes. Yes.

THE COURT: The court has considered the pre-sentence investigation. It has considered the facts surrounding the crime for which the Defendant is being sentenced. It has considered all statutory factors in aggravation and mitigation. It has considered the arguments of the State, the arguments of the Defense, and the statements of the Defendant.

The Court finds in aggravation Defendant's past criminal history. This is Defendant's ninth offense for driving under the influence of alcohol.

[The] Court therefore is going to sentence the Defendant to a period of eight years Illinois Department of Corrections."

¶ 18 Following the pronouncement of sentence, the trial court admonished defendant about his rights:

"Sir, you have the right to appeal this sentence. Before you could do that, you'd have to file with the Court within 30 days from today's date a notice of appeal. Or if you wish to choose to only challenge the sentence that was imposed today, you have 30 days from today's date to file a motion asking the Court to reconsider your sentence. You would then have 30 days from the date that the Court rules on that motion to file a notice of appeal.

You are entitled to legal representation. If you were indigent and could not afford to hire a lawyer one would be appointed for you by the Court without cost to you to assist you in any motions and to assist you on appeal.

Also a copy of all pertinent transcripts would be made available to you without cost.

Any issues or claims of error not set forth in your motion would be deemed waived for purposes of appeal."

¶ 19 Defendant did not file any further motions, but he immediately filed a timely notice of appeal.

¶ 20                                II. ANALYSIS

¶ 21 On appeal, defendant first challenges the sufficiency of the evidence. Next, defendant argues that the trial court abused its discretion by allowing the jury to see a portion of the administration of the HGN test in the arrest video. Defendant also argues that the State's comments during closing argument shifted the burden of proof. Finally, defendant contends that the trial court erred in passing sentence by double-counting his previous convictions, both as a qualifying factor for a Class X offense and as an aggravating factor to increase the length of his sentence. We consider each contention in turn.

¶ 22                               A. Sufficiency of the Evidence

¶ 23       Defendant first challenges the sufficiency of the evidence. On a challenge to the sufficiency of the evidence, the relevant question is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Torruella*, 2015 IL App (2d) 141001, ¶ 39. In an appeal, we do not retry the defendant or substitute our judgment for that of the jury. *Id.* It is the province of the jury to weigh the evidence, assess the witnesses' credibility, resolve any conflict in the evidence, and draw reasonable inferences and conclusions from the evidence. *Id.* Even so, while we accord great deference to the jury's decision whether to credit specific testimony, the jury's decision is not conclusive. *People v. Scott*, 2018 IL App (2d) 151056, ¶ 22.

¶ 24       Defendant was convicted of DUI. To sustain a conviction of DUI, the State must prove that a defendant was in actual physical control of a car while he or she was under the influence of alcohol. *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 17. In this case, defendant contests not that he was in actual physical control of his car, only that he was under the influence of alcohol.

¶ 25       To be under the influence of alcohol, a defendant must be under the influence to a degree that renders him or her incapable of driving safely. *Id.* ¶ 18. Circumstantial evidence may be used to prove this; further, the testimony of a single, credible police officer may alone sustain a conviction of DUI. *Id.*

¶ 26       In this case, Kresen personally observed defendant disregard his personal safety and the numerous signs and barricades to drive through a portion of Blivin Road that had been closed because of a large hole in the westbound lane of the road, the direction in which defendant was traveling. Defendant avoided the hole by moving his car into the oncoming lane, although defendant did not encounter an oncoming vehicle in the closed portion of Blivin Road. Once defendant entered traffic on Main Street, Kresen observed him driving north for a brief period of time. When Kresen activated his emergency lights, defendant hesitated for about 10 seconds before pulling to the side of the road.

¶ 27       When Kresen approached the car and initiated the personal encounter with defendant, he smelled a moderate odor of alcohol coming from defendant's vehicle. Defendant seemed confused, giving the same answer when asked both where he was going and where he was coming from. Kresen concluded that defendant's responses did not make sense. Kresen also observed that defendant's eyes were "glassy."

¶ 28       Kresen asked defendant to exit his car and defendant complied. Kresen subsequently determined that defendant was unable to follow his directions. Kresen repeatedly instructed defendant to keep his hands out of his pockets, while defendant repeatedly placed his hands into his pockets only seconds after receiving Kresen's instruction. Additionally, defendant apparently was unable to comprehend and follow Kresen's instructions for performing the one-leg-stand test because he asked Kresen to repeat the instructions and then refused to complete the one-leg-stand test or any other testing. Kresen testified that he was sure that defendant understood the brief and simple instructions for the one-leg-stand test, and when Kresen refused to repeat those instructions, defendant became visibly agitated. Kresen believed that defendant wanted to fight, and defendant calmed down only when backup officers arrived. Defendant apparently raised his voice, refused to perform any field sobriety tests, and stated, "just arrest me." Defendant also refused to perform the breath test when he was at the police station. Based on all of these factors, we hold that there was sufficient

evidence for a reasonable finder of fact to conclude beyond a reasonable doubt that defendant was under the influence of alcohol and, therefore, guilty of the offense of DUI.

¶ 29   Defendant argues that he was able to perform a number of tasks without any problem or indication of impairment. Because he was able to complete these tasks, defendant concludes that the remaining evidence was so undermined as to be insufficient to support a guilty verdict. We disagree. There is no question that defendant did not run into any barricades and was able to complete a right turn into traffic successfully. Additionally, defendant did not weave out of his lane while proceeding north on Main Street or cross either the center or fog line of the road. Defendant pulled his car to the side of the road without falling into the ditch or ending at an angle to the road. Defendant was able to exit his car unassisted, and he was not observed to stumble or otherwise lose his balance during the encounter. Defendant points specifically to these facts in concluding that the State's evidence was insufficient to prove beyond a reasonable doubt that he was under the influence of alcohol. We note, however, that the State need not have proved that defendant was completely incapacitated by alcohol; rather, the State had to demonstrate that defendant was impaired by alcohol only to the extent that it rendered him incapable of driving safely. *Id.* ¶ 20. The fact that there is evidence supporting a defendant's position does not render the evidence supporting a conviction insufficient. *Id.* Accordingly, although we recognize that the evidence was short of showing that defendant was completely incapacitated by alcohol, it was nevertheless sufficient to support his conviction of DUI beyond a reasonable doubt.

¶ 30   Defendant argues that *People v. Barham*, 337 Ill. App. 3d 1121 (2003), compels the conclusion that the evidence was insufficient to prove him guilty beyond a reasonable doubt. In *Barham*, the defendant had attended a political fundraiser for a state representative. *Id.* at 1124. After an hour, the defendant left and went, with friends, to a bar. *Id.* At the bar, the defendant consumed an undetermined number of alcoholic beverages, between two and nine. *Id.* There was no testimony that anyone in the defendant's party was intoxicated or acting erratically. *Id.* at 1124-25. The defendant and his passenger left the bar between 10:30 p.m. and 11 p.m. *Id.* at 1125.

¶ 31   At about midnight, the defendant's car was found down an embankment, with the passenger side of the car wrapped around a tree. *Id.* The civilians who discovered the accident and who remained with the defendant at the site of the accident did not detect any odor of alcohol on the defendant's breath; however, the paramedic who treated the defendant at the accident site and a responding police officer both noticed the smell of an alcoholic beverage on the defendant's breath. *Id.* at 1125-26. The defendant, at least initially, was alert and responsive to the paramedic, who noticed that the defendant had head injuries. *Id.* at 1125. Upon the paramedic's routine questioning, the defendant admitted that he had consumed alcohol, but he did not say how many drinks. *Id.* The defendant was transported to a hospital where, about two hours after the accident was discovered, his blood was drawn. *Id.* at 1126. At about 2:20 a.m., the defendant went into respiratory failure, was intubated, and was transferred to intensive care. *Id.* At about 3:30 a.m., the police officer tried to interview the defendant, but the defendant was unresponsive. *Id.* The police officer ordered an involuntary blood draw, which was taken at about 3:30 a.m. *Id.* The defendant's passenger died from his injuries. *Id.* As is relevant here, the defendant was convicted of reckless homicide, causing the death of his passenger by operating a vehicle while he was under the influence of alcohol to such a degree that he was incapable of safely driving. *Id.*

¶ 32    In considering whether the State had proved that the defendant was intoxicated, the appellate court noted that there was evidence that the defendant had been drinking, but the quantity had not been established. *Id.* at 1131. The appellate court also emphasized that there was no evidence that the defendant appeared to be intoxicated or was behaving inappropriately; additionally, there was no evidence that the defendant was driving erratically, weaving through traffic, or unable to maintain his lane of travel. There also was no evidence that the defendant's eyes were glassy or bloodshot or that his speech was slurred. *Id.* In short, the appellate court concluded that the evidence was insufficient to support a conviction where the only evidence was that the defendant consumed an unknown quantity of alcohol and there was no evidence demonstrating that the defendant's physical and mental abilities were impaired by alcohol at the time of the accident. *Id.* at 1136.

¶ 33    *Barham* is distinguishable. Here, Kresen directly observed defendant drive through a barricaded portion of the roadway, leaving his lane and traveling in the oncoming lane before entering traffic on Main Street. Kresen also directly observed that defendant did not immediately pull over when Kresen activated his emergency lights but hesitated for as much as 10 seconds. Kresen also detected a moderate odor of alcohol in the cabin of defendant's car as well as on defendant's breath once defendant had exited his car. Kresen testified that defendant initially appeared to be inexplicably confused, answering that he was both coming from and going to Wisconsin before claiming to be lost and unsure of where he was. Defendant was unable to follow simple instructions, such as keeping his hands out of his pockets (and there was testimony that the weather was cool, not cold; further defendant did not comment that his hands were cold and does not argue on appeal that he kept placing his hands in his pockets due to the coolness of the weather). Moreover, defendant became agitated and exclaimed, "just arrest me," when Kresen refused to repeat the instructions for the one-leg-stand test. Kresen also testified that he was sure that defendant understood the instructions for that test in light of their simplicity and brevity and the fact that he demonstrated the test for defendant as he was giving the instructions.

¶ 34    In *Barham*, there was no evidence that the defendant exhibited any behaviors corroborative of alcohol impairment. Here, by contrast, defendant's driving through a barricaded street, confusion, inability to follow directions, and agitation and combativeness were all behaviors consistent with and indicative of alcohol impairment. Thus, unlike in *Barham*, there was evidence to demonstrate that, at the time of the offense, defendant was impaired by alcohol to such a degree as to be incapable of driving safely.[1]

¶ 35    Defendant also contends that there was insufficient evidence of intoxication because no chemical testing was performed. This overlooks the fact that defendant refused to submit to any chemical testing, and this refusal could be used to infer defendant's consciousness of his guilt of the offense charged. *People v. Morris*, 2014 IL App (1st) 130152, ¶ 20. The fact that defendant was under arrest when he refused the testing is of no moment: even if he could have been compelled to submit to a blood draw, the point is that defendant was asked to submit and he refused. His awareness that testing would show that he was above the legal limit was a valid inference to be drawn from this circumstance. Accordingly, we reject defendant's argument

---

[1]Defendant also specifically argues, based on *Barham*, that there was no evidence that his driving abilities were impaired. The same evidence that distinguished *Barham* serves to rebut this argument.

that *Barham* compels the conclusion here that the evidence was insufficient to convict him beyond a reasonable doubt.

¶ 36     Next, relying on cases addressing motions to suppress, defendant argues that the evidence was insufficient to support a finding of probable cause and was therefore insufficient to support a conviction. Defendant's contention is not without surface appeal. If the evidence was insufficient to establish probable cause as to defendant's impairment, a much lower threshold than proof beyond a reasonable doubt, how can the same evidence be proof beyond a reasonable doubt? Defendant concludes that there was insufficient evidence to support probable cause, let alone proof beyond a reasonable doubt, because there was evidence only of a moderate odor of alcohol and no evidence concerning the amount of alcohol consumed, erratic driving, or other facts corroborative of impairment.

¶ 37     There are at least two problems with defendant's argument. First, on a motion to suppress, the trial court's factual determinations are reviewed to determine whether they are against the manifest weight of the evidence, while the ultimate determination is reviewed *de novo*. *People v. Motzko*, 2017 IL App (3d) 160154, ¶ 18. Thus, the trial court's factual determinations on a motion to suppress are accorded significant deference; by contrast, here, the evidence is viewed in the light most favorable to the prosecution. In other words, the presumption in a sufficiency-of-the-evidence case favors the State; in a manifest-weight case, it favors the trial court's factual determinations. Therefore, if the trial court determined facts that were insufficient, then the presumption favors that determination (and if the trial court determined facts that were sufficient, the presumption would favor that ruling). Thus, the differing standards of review make illogical defendant's claim that if there is no probable cause, then the evidence cannot be sufficient to convict.

¶ 38     Second, defendant overlooks the evidence that supports his conviction while he contemplates only the evidence showing that he was not completely incapacitated by alcohol. We have acknowledged that defendant did not hit the barricades and drove within his lane when followed by Kresen. He also did not fumble when producing his driver's license, and when he exited his car he did not stumble, sway, or lose his balance. This, however, is not all of the evidence. Kresen testified that defendant appeared to be confused, could not or would not follow directions, and was apparently unable to comprehend the instructions and demonstration he was given for the one-leg-stand test. Additionally, defendant became agitated and raised his voice, exclaiming, "just arrest me," before refusing to attempt further field sobriety tests, and he refused all further forms of testing. Kresen did not testify that defendant was completely incapacitated, and if that had been the finding, the evidence would perhaps have been insufficient. Rather, defendant was found to be under the influence of alcohol to the extent that he could not safely operate his vehicle. Despite the tasks that defendant was able to perform, the evidence was sufficient to support this finding.

¶ 39     Defendant cites *Motzko* for the proposition that the odor of alcohol and inadequate performance on a field sobriety test were insufficient to support probable cause to believe that the defendant was driving under the influence. *Id.* ¶ 20. The problem with analogizing this case to *Motzko*, however, is the fact that the trial court there expressly determined that there was no evidence to corroborate a conclusion that the defendant was impaired by alcohol. *Id.* ¶¶ 20-25. Importantly, the trial court determined that the police officer was not credible. *Id.* ¶ 26. Thus, because the presumption ran in favor of the trial court's factual determinations, the appellate court determined that there was no probable cause to arrest the defendant for driving under the

influence of alcohol. *Id.* Here, Kresen was evidently determined to be credible; thus there was evidence supporting a determination that defendant was under the influence of alcohol to the extent that he was incapable of driving safely. Thus, *Motzko* is inapposite.

¶ 40 Similarly, defendant relies on *People v. Day*, 2016 IL App (3d) 150852, for the same proposition: the determination there that the facts were insufficient to support a probable-cause determination means that the facts here do not support defendant's conviction. Once again, the court in *Day* held that the lack of corroboration was fatal to a probable-cause determination. *Id.* ¶¶ 37-38. Here, by contrast, there were corroborating facts, and the presumption runs opposite to that in *Day*. *Day*, therefore, does not much support defendant's contention.

¶ 41 For the foregoing reasons, we hold that the evidence was sufficient to prove each element of the offense of aggravated DUI beyond a reasonable doubt. There was evidence showing that, when he was operating the vehicle, defendant was impaired by his alcohol consumption to the extent that he could not drive safely. This evidence included defendant's confusion, his inability to follow directions, his inability to understand instructions and demonstrations, and his agitation and combativeness.

¶ 42 B. Admission of the Portion of the Recording of the HGN Test

¶ 43 Defendant next contends that the trial court abused its discretion in admitting a portion of the recording of defendant taking the HGN test. Defendant argues that, because the State agreed that the HGN test was improperly conducted, the jury should have been precluded from seeing any footage of Kresen administering the test. The trial court, over defendant's objections, admitted a portion of the recording because it showed defendant disobeying Kresen's instructions to keep his hands at his sides and out of his pockets. Defendant contends that, under *People v. McKown*, 236 Ill. 2d 278, 306 (2010), the recording was completely inadmissible.

¶ 44 The admission of evidence is within the trial court's sound discretion, and its decision will not be disturbed absent an abuse of that discretion. *People v. Axtell*, 2017 IL App (2d) 150518, ¶ 90. A trial court abuses its discretion when no reasonable person would take the view adopted by the trial court. *Id.*

¶ 45 In *McKown*, the supreme court held that, for the results of an HGN test to be admitted at trial, a proper foundation must be laid, including the officer's proper training and administration of the test. *McKown*, 236 Ill. 2d at 306. The supreme court held that the administration of the HGN test in that case did not meet the standards that the court had enunciated, so the admission of any testimony concerning the test and its results was reversible error. *Id.* at 310-11. Here, defendant argues that, similarly, Kresen did not correctly perform the HGN test, so the admission of the recording was likewise erroneous, and that, given the closeness of the evidence, the error cannot be deemed harmless beyond a reasonable doubt.

¶ 46 Defendant's argument is a lot to unpack. The primary difference between this case and *McKown* is the fact that defendant's HGN test was memorialized on a video recording, so the jury was able to see defendant's performance of a part of the test. In *McKown*, by contrast, the officer testified about the test and the conclusions he drew from the defendant's performance. Here, Kresen did not testify at all about the test—either his administration of the test or defendant's performance of the test; likewise, the State made absolutely no argument about the test. Thus, in this respect, *McKown* is significantly distinguishable. The question remains,

however, whether the jury should have observed the portion of the recording admitted to illustrate defendant's inability or refusal to comply with Kresen's instructions.

¶ 47    We believe that the result in this case is governed by *People v. King*, 2014 IL App (2d) 130461. In that case, the police officer improperly administered the HGN test, and the video of the test was published to the jury. *Id.* ¶¶ 4-8. However, the officer did not couch his testimony in terms of that test or testify that he had drawn any conclusions from the defendant's performance of the test; rather, the officer testified that, during the conduct of the test, the defendant was unable to follow his instructions because the defendant turned his head, which was a factor in the officer's conclusion that the defendant was under the influence of alcohol. *Id.*

¶ 48    On appeal, the defendant challenged the admission and publication to the jury of the video of the HGN test as well as the officer's testimony about the conduct of the HGN test. *Id.* ¶ 9. This court observed:

> "[A]ccording to [the] defendant, [the officer's] testimony did not satisfy the foundational requirements set forth in [*McKown*]. That might be true, but [*McKown*] cannot reasonably be understood to apply to the type of testimony at issue in this case. [The officer] never testified that he formed any opinions based [on] the movement of defendant's *eyes*. Thus, it is of no moment that [the officer] might not have been properly trained—and might not have followed the proper procedures—to elicit eye movement indicative of the consumption of alcohol. [The officer] merely related an incidental observation while he administered the HGN test—that [the] defendant moved his head despite being instructed to keep it still. Nothing in the *McKown* decisions bars an officer from relating such observations, to the extent that they are independently relevant, and there is no sensible reason to link the admissibility of such evidence to the foundational requirements for the HGN test itself." (Emphasis in original.) *Id.* ¶ 11.

¶ 49    We then held that "a motorist's failure to follow directions on a particular field sobriety test does not lose all relevance simply because the test might not have been designed for the precise purpose of gauging the ability to follow directions." *Id.* ¶ 12. Thus, we determined that our holding did not "imply that, where the State is aware that the HGN test was not conducted properly and, thus, that the results [were] inadmissible, the officer's otherwise relevant and material observations [could] or should [have been] characterized as *part of the administration* of an HGN or other field sobriety test." (Emphasis in original.) *Id.* ¶ 13.

¶ 50    The defendant in *King* also argued that, by offering an opinion as to the defendant's impairment, the State violated the strictures of *McKown*. We rejected this contention, noting that the evidence showing that the defendant did not follow the officer's instructions was separate and apart from any scientific evidence that would have been associated with the HGN test (and which neither the officer nor the State commented upon). *Id.* ¶ 14.

¶ 51    Here, the State conceded that the HGN test was improperly conducted. Unlike in *King*, Kresen did not even mention the HGN test; rather, he testified that defendant did not follow his instructions, and the portion of the recording of the HGN test admitted and published to the jury illustrated defendant's failure to follow those instructions. Moreover, the State did not mention or make any argument regarding the HGN test; rather, the State focused solely on defendant's inability to follow Kresen's instructions during the portion of the recording that was published to the jury. This was proper under *King* (*id.* ¶¶ 13-14), and it did not violate the

requirements of *McKown* because the admitted portion of the recording and all of the testimony and argument dealt only with defendant's failure to follow instructions and there was no mention whatsoever of the HGN test. Accordingly, we hold that the portion of the recording containing a part of the administration of the HGN test was properly admitted and published to the jury.

¶ 52                               C. Rebuttal Closing Argument and Burden Shifting

¶ 53     Defendant next argues that the State improperly shifted the burden of proof in its rebuttal closing argument when the prosecutor asked, "if he wasn't under the influence, why didn't [he] take that simple test. If he wasn't guilty, why did he refuse field sobriety testing?" Defendant argues that these two questions undermined defendant's presumption of innocence and shifted the burden of proof. We disagree.

¶ 54     A closer inspection of the State's rebuttal closing argument reveals that the prosecutor asked three rhetorical questions. The first time, the following colloquy occurred:

"That's why they have these DUI evaluations, that's why they send these officers to training, because somebody's not going to simply state 'I'm a drunken mess, arrest me.' Oh, wait a minute, he did say 'go ahead and arrest me.' That's consciousness of guilt.

Don't be blinded by the defense attorney saying he was able to do this, he was able to do that. He didn't show a sign here, he didn't show a sign there. Don't be blinded to the signs that he did show, the obvious signs. We don't know how he would have done on the physical portion of those field sobriety tests, we don't know what his breath alcohol level was, because he refused to do those things. That's called consciousness of guilt. If he wasn't guilty, why didn't he take the test—

[DEFENSE COUNSEL]: Objection, Judge, burden shifting.

THE COURT: Overruled.

[THE STATE]: That's called consciousness of guilt."

¶ 55     The next two rhetorical questions occurred later in the rebuttal closing argument:

"There is one more decision, though, that you heard about, a decision that's absolutely telling about his consciousness of guilt and that you can infer his consciousness of guilt from, and that's that he refused a breath test at the station. Remember in your deliberations and use that as one of the factors that you use in finding the defendant guilty. Again, if he wasn't under the influence, why didn't [he] take that simple test? If he wasn't guilty, why did he refuse field sobriety testing? He didn't take that test because he was impaired. When you drink and drive to the point where you're going around barricades, driving into oncoming lanes, have no idea where you are, can't follow simple instructions, yell at an officer, refuse field sobriety testing, tell an officer 'just arrest me' and refuse a breath test, you combine all those factors, you're driving under the influence of alcohol and that's a crime in this state."

The defense attorney did not object to this second set of remarks.

¶ 56     Defendant argues that he objected to the second and third rhetorical questions, but the record shows clearly that he did not. Rather, defendant objected only to the first rhetorical question. The failure to make a contemporaneous objection in the trial court forfeits a claim of error, even if a similar objection was made earlier to a similar comment. *People v. Anaya*, 2017

- 13 -

IL App (1st) 150074, ¶ 81. Thus, defendant has forfeited his argument with respect to the questions, "Again, if he wasn't under the influence, why didn't [he] take that simple test? If he wasn't guilty, why did he refuse field sobriety testing?"

¶ 57    Additionally, defendant does not argue that we should apply a plain-error analysis to consider the second and third questions. The burden is on a defendant to establish plain error; if a defendant does not argue for a plain-error analysis, then the defendant forfeits any plain-error contention. *People v. Olaska*, 2017 IL App (2d) 150567, ¶ 133. Therefore, defendant here has forfeited any consideration of the second and third questions. *Id.*

¶ 58    Turning to the first rhetorical question, defendant made a contemporaneous objection and raised the issue in his posttrial motion, thereby preserving the issue for our review. The standard of review for improper closing arguments appears to be unsettled. *People v. Legore*, 2013 IL App (2d) 111038, ¶ 48. On the one hand, *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007), held that whether a prosecutor's remarks were so egregious as to warrant a new trial presented a legal question, subject to *de novo* review. On the other hand, *Wheeler* cited with approval and relied on *People v. Blue*, 189 Ill. 2d 99, 128 (2000), which applied the abuse-of-discretion standard to the same issue. Where the standard of review does not affect the outcome of the issue, courts have noted that fact and proceeded to address the issue without attempting to settle the standard in the absence of a clear directive from our supreme court. *People v. Burman*, 2013 IL App (2d) 110807, ¶ 26. Here, the result is the same under either the *de novo* standard or the abuse-of-discretion standard.

¶ 59    Prosecutors are given wide latitude in closing argument. *Wheeler*, 226 Ill. 2d at 123. The issue with improper remarks is whether they engendered substantial prejudice to the defendant such that it is impossible to say whether the remarks resulted in a guilty verdict. *Id.* The fact that an objection to certain remarks has been forfeited does not mean that we excise the forfeited remarks from our consideration; rather, we consider all of the closing arguments, including the context that can be supplied by the forfeited remarks. *Id.* at 122-23.

¶ 60    Again, in the properly preserved first instance, the prosecutor stated:
        "That's why they have these DUI evaluations, that's why they send these officers to training, because somebody's not going to simply state 'I'm a drunken mess, arrest me.' Oh, wait a minute, he did say 'go ahead and arrest me.' That's consciousness of guilt.
        Don't be blinded by the defense attorney saying he was able to do this, he was able to do that. He didn't show a sign here, he didn't show a sign there. Don't be blinded to the signs that he did show, the obvious signs. We don't know how he would have done on the physical portion of those field sobriety tests, we don't know what his breath alcohol level was, because he refused to do those things. That's called consciousness of guilt. If he wasn't guilty, why didn't he take the test—"

¶ 61    As we have observed, a defendant's refusal to submit to chemical testing evidences a consciousness of guilt. *Morris*, 2014 IL App (1st) 130152, ¶ 20. In argument, a prosecutor may comment on a defendant's consciousness of guilt, but the prosecutor must be careful not to cross the line and blur the distinction between the defendant's consciousness of guilt and requiring the defendant to prove his or her innocence. *People v. Johnson*, 218 Ill. 2d 125, 140 (2005) (condoning argument that the refusal of chemical testing in a DUI case shows consciousness of guilt but cautioning that an argument that the defendant could have proved himself or herself innocent is reversible error because it undermines the presumption of

- 14 -

innocence and violates the principle that the defendant is not required to prove anything in a criminal prosecution). The line appears to be fairly solidly drawn between comments that a defendant refused testing because the defendant was conscious that the test results would reveal his or her guilt (*People v. Graves*, 2012 IL App (4th) 110536, ¶ 45 ("a prosecutor may argue that a defendant's refusal to submit to chemical testing shows consciousness of guilt")) and comments that the defendant could have proved his or her innocence had he or she submitted to testing (*Johnson*, 218 Ill. 2d at 140 (remarks suggesting that the defendant failed to prove his innocence to the police officer by failing to take the breath test were improper)).

¶ 62    The comments in this case fall on the proper side of the line. Here, the prosecutor expressly linked his rhetorical question to the concept of consciousness of guilt, and this has been approved even in cases, such as *Johnson*, where the comments at issue were determined to have crossed the line. See also *Graves*, 2012 IL App (4th) 110536, ¶ 45 ("a prosecutor may argue that a defendant's refusal to submit to chemical testing shows consciousness of guilt"). The clear import of the prosecutor's argument was that defendant was aware that he was driving while he was impaired by his consumption of alcohol. We see no other reasonable way to interpret the prosecutor's remarks.

¶ 63    Defendant argues that the prosecutor's use of the term "guilty" or "guilt" suggested that defendant was required to prove his own innocence by submitting to the proposed testing. We disagree. The prosecutor argued: "We don't know how he would have done on the physical portion of those field sobriety tests, we don't know what his breath alcohol level was, because he refused to do those things. That's called consciousness of guilt. If he wasn't guilty, why didn't he take the test—" We can certainly see how the statement, "If he wasn't guilty, why didn't he take the test," in isolation, could be misunderstood as a comment that the defendant needed to prove that he was not guilty. A cleaner practice would have been for the prosecutor to pose and answer the question in terms of consciousness of guilt, carefully avoiding the term "guilty." With that observation made, we still cannot say that, in the quoted comment, the prosecutor was suggesting that defendant was required to prove his innocence or even that he could have proved his innocence by taking the test. Rather, the prosecutor was expressly saying that defendant refused testing because he was aware that the testing would reveal that he was impaired by his alcohol consumption: defendant was conscious that the testing would show his guilt. Because "consciousness of guilt" is a permitted argument and the prosecutor was expressly arguing that defendant's refusal was based on his consciousness of his guilt, we reject defendant's contention that the words "guilty" and "guilt" should be forbidden terms in prosecutorial argument. Indeed, in *People v. James*, 2017 IL App (1st) 143036, ¶ 17, the prosecutor argued that the defendant's flight showed his " 'consciousness of guilt.' " The court held that the State was able to make that argument to the jury. *Id.* ¶ 49.

¶ 64    In addition, we note that the same analysis applies to the forfeited instances identified above. Even had they not been forfeited by defendant's failure to object to them, the comments were plainly directed at defendant's consciousness of guilt and were therefore not erroneous. Thus, we conclude that the prosecutor's argument advanced here, in both the preserved and the forfeited comments, was proper.

¶ 65                                    D. Double Enhancement

¶ 66    Defendant last argues that the trial court applied an improper double enhancement in sentencing him to an eight-year term of imprisonment. Specifically, defendant contends that

the trial court improperly used his previous convictions of DUI both for his eligibility for a Class X sentence and as aggravating factors to justify the eight-year sentence.

¶ 67　　　The State argues that defendant forfeited this contention because he did not file a motion to reconsider the sentence. Defendant concedes that he did not file such a motion, thereby forfeiting this contention, but he asks that the rule of forfeiture be relaxed because the trial court did not properly admonish him about his rights pursuant to Illinois Supreme Court Rule 605(a)(3) (eff. Oct. 1, 2001).

¶ 68　　　The trial court gave defendant the following admonitions:

> "Sir, you have the right to appeal this sentence. Before you could do that, you'd have to file with the Court within 30 days from today's date a notice of appeal. Or if you wish to choose to only challenge the sentence that was imposed today, you have 30 days from today's date to file a motion asking the Court to reconsider your sentence. You would then have 30 days from the date that the Court rules on that motion to file a notice of appeal.
>
> You are entitled to legal representation. If you were indigent and could not afford to hire a lawyer one would be appointed for you by the Court without cost to you to assist you in any motions and to assist you on appeal.
>
> Also a copy of all pertinent transcripts would be made available to you without cost.
>
> Any issues or claims of error not set forth in your motion would be deemed waived for purposes of appeal."

¶ 69　　　Rule 605(a)(3) requires that the following admonitions be given:

> "[T]he trial court shall also advise the defendant as follows:
>
> A. that the right to appeal the judgment of conviction, excluding the sentence imposed or modified, will be preserved only if a notice of appeal is filed in the trial court within thirty (30) days from the date on which sentence is imposed;
>
> B. that prior to taking an appeal, if the defendant seeks to challenge the correctness of the sentence, or any aspect of the sentencing hearing, the defendant must file in the trial court within 30 days of the date on which sentence is imposed a written motion asking to have the trial court reconsider the sentence imposed, or consider any challenges to the sentencing hearing, setting forth in the motion all issues or claims of error regarding the sentence imposed or the sentencing hearing;
>
> C. that any issue or claim of error regarding the sentence imposed or any aspect of the sentencing hearing not raised in the written motion shall be deemed waived; and
>
> D. that in order to preserve the right to appeal following the disposition of the motion to reconsider sentence, or any challenges regarding the sentencing hearing, the defendant must file a notice of appeal in the trial court within 30 days from the entry of the order disposing of the defendant's motion to reconsider sentence or order disposing of any challenges to the sentencing hearing." Ill. S. Ct. R. 605(a)(3) (eff. Oct. 1, 2001).

¶ 70　　　The trial court's admonitions to defendant included admonitions about the right to appeal and the time frame in which to perfect the appeal. See Ill. S. Ct. R. 605(a)(3)(A), (D) (eff. Oct. 1, 2001). They included that he had 30 days to file a motion to reconsider the sentence. See Ill.

S. Ct. R. 605(a)(3)(B) (eff. Oct. 1, 2001). They also included that any issues or claims of error not raised in the motion to reconsider would be forfeited for purposes of appeal. See Ill. S. Ct. R. 605(a)(3)(C) (eff. Oct. 1, 2001). Thus, we conclude that the trial court's admonitions covered all of the points required by Rule 605(a)(3).

¶ 71 Defendant argues that the admonitions included extraneous information and were not presented in the same order and the same language used in Rule 605(a)(3). This is true. However, only substantial compliance is necessary for Rule 605(a) admonitions. *People v. Henderson*, 217 Ill. 2d 449, 462-63 (2005). We hold that, because each of the required admonitions was given to defendant, even if the language did not exactly track the rule, the trial court substantially complied with the admonition requirements of Rule 605(a). Because the trial court substantially complied with Rule 605(a), defendant was fully apprised of his rights and obligations to preserve his ability to challenge any claimed sentencing errors on appeal. Thus, we need not and do not relax the rule of forfeiture applicable to defendant in this case. Accordingly, we hold that defendant has forfeited his double-enhancement claim on appeal because he did not preserve the issue by filing a motion to reconsider the sentence.

¶ 72 Forfeiture aside, there is no merit to defendant's contention. It has long been established that the fact of a defendant's prior convictions may determine his or her eligibility for a Class X sentence, but in determining the length of the defendant's sentence, the trial court remains free to consider the nature and circumstances of those prior convictions along with all of the other factors in mitigation and aggravation. *People v. Thomas*, 171 Ill. 2d 207, 227-28 (1996). For example, in *People v. Morrow*, 2014 IL App (2d) 130718, ¶¶ 19-20, the trial court properly considered the defendant's previous DUI convictions, not only for the defendant's eligibility for a Class X sentence, but also as evidence of aggravating circumstances, including recidivism and failure to rehabilitate, justifying the length of the defendant's sentence. Here, the trial court considered that defendant had not only the five DUI convictions necessary to qualify for Class X sentencing but also four additional DUI convictions (nine in total) in imposing a sentence of eight years—two years above the minimum sentence. Although the trial court was terse in its explanation, the nine convictions illustrated defendant's recidivism, his failure to rehabilitate, and the significant possibility of harm each and every time defendant got behind the wheel while under the influence of alcohol. We note that the trial court's discussion with defendant following his statement in allocution touched on these factors, and we consider the sentencing hearing as a whole. *Id.* ¶ 14 ("In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." (Internal quotation marks omitted.)). Accordingly, defendant's double-enhancement claim is without merit.

¶ 73                                   III. CONCLUSION

¶ 74 For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed the state's attorney fee of $50 pursuant to section 4-2002(a) of the Counties Code (55 ILCS 5/4-2002(a) (West 2016)) for the cost of this appeal. See *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 75            Affirmed.