# Illinois Official Reports

## Appellate Court

---

### *People v. Williams*, 2018 IL App (2d) 160683

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID R. WILLIAMS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0683 |
| Filed | October 23, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, Nos. 13-DT-892, 13-CM-3596, 13-TR-48988; the Hon. Robert J. Morrow, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Timothy J. Storm, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Joseph H. McMahon, State's Attorney, of St. Charles (Patrick Delfino, David J. Robinson, and Sally A. Swiss, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice Hudson and Justice Burke concurred in the judgment and opinion.


# OPINION

¶ 1        Following a jury trial in the circuit court of Kane County, defendant, David R. Williams, was found guilty of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2012)), possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2012)), and disobeying a traffic control device (625 ILCS 5/11-305(a) (West 2012)). Defendant argues on appeal that the trial court erred in denying his pretrial motion to quash his arrest and suppress evidence discovered during a search incident to his arrest. Defendant further argues that the State failed to prove beyond a reasonable doubt that he was guilty of DUI. We affirm.

¶ 2                                   I. BACKGROUND

¶ 3        At the hearing on defendant's motion to quash and suppress, Elgin police officer Thomas Michael testified that, on August 30, 2013, at 12:57 a.m., he was driving west on Lillian Street, approaching McLean Boulevard. Michael was stopped at a red light behind a green Cavalier. The left-turn arrow activated, at which point the Cavalier proceeded straight through the intersection. Michael testified that the Cavalier lunged into the intersection, paused, and then continued through into the parking lot for the Elgin Mall. Michael conducted a traffic stop. Michael identified defendant as the Cavalier's driver. Defendant's speech was "kind of mumbled, slow and slurred," and Michael smelled an alcoholic beverage "coming from [defendant's] person." Defendant advised Michael that he had come from a bar—JB's—located on the northeast corner of Lillian and McLean. Defendant told Michael that he had consumed four beers. Suspecting that defendant might be impaired, Michael contacted Elgin police officer Bernhard Bajak and requested that Bajak conduct an investigation. Bajak arrived a few minutes later and ultimately arrested defendant. Michael searched the Cavalier and discovered what appeared to be cannabis pipes.

¶ 4        Bajak testified that he spoke with defendant and asked him to step out of the vehicle. Defendant emerged from the vehicle without stumbling or falling, but he swayed as he stood outside the vehicle. Bajak smelled the odor of alcohol on defendant. When asked whether defendant's eyes were "red, bloodshot, glassy, watery," Bajak answered "yes." Bajak testified that he asked defendant to perform field sobriety tests, but that defendant refused. Defendant claimed that a football injury prevented him from performing the tests. He also claimed that he could not walk a straight line sober. Michael's and Bajak's squad cars were equipped with video cameras. Recordings of their encounters with defendant were entered into evidence and played at the suppression hearing.

¶ 5        Defendant testified that he was employed "do[ing] HVAC for new construction housing." The day before his arrest, he did not fall asleep until 1:30 to 2 a.m., and he woke up at around 4 a.m. to go to work. Defendant worked from 7 a.m. to 5 p.m., and he was "ridiculously" tired. Defendant testified that he owned a green 2002 Cavalier. When he bought the Cavalier, it had a faulty water pump. While he was replacing the water pump, the engine fell off of a jack stand.

Thereafter, the Cavalier did not idle properly. When the vehicle was idling, defendant would have to shift into neutral and rev the engine. Otherwise, the engine would die. Defendant testified that, when he drove through the intersection of Lillian and McLean, he initially mistook the green arrow for a green light. He proceeded through the intersection because he was concerned that his engine would die while he was in the middle of it.

¶ 6        Michael, Bajak, and defendant were the only witnesses at trial. Michael's and Bajak's trial testimony about the events leading to defendant's arrest was similar to their testimony at the suppression hearing. However, Michael also testified that defendant's vehicle did not weave as it proceeded through the intersection, that defendant used his turn signal when he turned into the parking lot, and that defendant parked with his vehicle properly positioned in a parking space.

¶ 7        Bajak and Michael testified about events that occurred after defendant was arrested. Bajak testified that Michael conducted an inventory search of the Cavalier. Michael found two objects that appeared to be pipes for smoking cannabis. Bajak testified that it was his opinion that a substance found inside the pipes was cannabis. Michael confirmed that he searched the vehicle and discovered what appeared to be cannabis pipes. Bajak gave defendant the opportunity to take a breath test. Defendant refused.

¶ 8        Defendant testified that he worked in the HVAC field, installing ductwork and heating and air conditioning units in homes under construction. On August 29, 2013, defendant woke up at 3:30 or 4 a.m. He started work at 7 a.m. at a job site in St. Charles. Defendant had nothing to eat prior to beginning work. He took a lunch break at 11 a.m. While working, he drank Gatorade or coffee. He did not drink any alcohol. Defendant worked until 3 to 3:30 p.m., and it was nearly 5 p.m. when he got home. Defendant took a shower, ate a French bread pizza, and drove to the Elgin Lanes bowling alley for his bowling league. The drive took about 45 minutes, and he arrived at about 6:30 p.m. Defendant had two beers while bowling. He had the first beer with food at about 6:45 p.m. He had the second beer at about 8:30 p.m. Defendant bowled until about 10:30 p.m. and was "pretty tired" when he was done. He and a coworker then went to JB's. He had a beer at about 11 p.m. and another one about an hour to an hour and a half later. Defendant left JB's at about 1 a.m. He was exhausted, but was not under the influence of alcohol.

¶ 9        Defendant testified about the problem idling his vehicle's engine. When he left JB's, he made a right turn onto Lillian Street and stopped at a red light. He was planning to drive into the Elgin Mall to buy a burrito before going home. He revved the engine to keep it from dying. When the left-turn arrow came on, defendant shifted into drive. According to defendant, "that was when the car lurched a little bit into the intersection and started to spit, sputter and die." He put his foot on the gas pedal so that he would not get stuck in the middle of the intersection. Defendant had no trouble retrieving his wallet and "the necessary documentation" when Michael stopped him. He did not stumble or fall when getting out of his car. Defendant testified that while a sophomore in high school he suffered a football injury. His doctor told him that he would likely have trouble standing still and walking normally.

¶ 10       The jury found defendant guilty of the three charged offenses. Defendant filed a motion for a new trial. The trial court denied the motion and sentenced defendant to an 18-month term of conditional discharge and 240 hours of community service. This appeal followed.

II. ANALYSIS

¶ 12      We first consider whether the trial court erred in denying defendant's motion to quash his arrest and suppress evidence. Upon review of a ruling on a motion to quash and suppress, the trial court's findings of fact are entitled to great deference, and we will reverse those findings only if they are against the manifest weight of the evidence. *People v. Jarvis*, 2016 IL App (2d) 141231, ¶ 17. The trial court's legal conclusion as to whether the evidence must be suppressed is subject to *de novo* review. *Id.*

¶ 13      Defendant contends that there was no probable cause to arrest him for DUI. "Probable cause to arrest exists when the totality of the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *People v. Meo*, 2018 IL App (2d) 170135, ¶ 25. Defendant was charged with DUI under section 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2) (West 2012)), which provides that a person shall not drive or be in actual physical control of a vehicle while under the influence of alcohol. A person is under the influence of alcohol when he or she is " 'less able, either mentally or physically, or both, to exercise clear judgment, and with steady hands and nerves operate an automobile with safety to himself and to the public.' " *People v. Bostelman*, 325 Ill. App. 3d 22, 34 (2001) (quoting *People v. Seefeldt*, 112 Ill. App. 3d 106, 108 (1983)).

¶ 14      In *People v. Wingren*, 167 Ill. App. 3d 313, 320 (1988), this court observed that

> "[p]robable cause to arrest a motorist for DUI has been commonly established by the testimony of the arresting officer, in spite of the defendant's contradictory testimony, that the motorist had about him or her the odor or strong odor of alcohol, had slurred speech or had red and glassy eyes."

We added that,

> "[g]enerally, these observations are supplemented by other observations apparent to the officer or inferred from his observations such as speeding, weaving, erratic driving, driving on the wrong side of the road, being stuck in a ditch [citation] or, as in the case at bar, being in a vehicle which is stuck in the mud." *Id.* at 321.

In arguing that probable cause was absent here, defendant relies, in part, on *People v. Motzko*, 2017 IL App (3d) 160154, ¶ 23, where the court upheld the trial court's conclusion that there was no probable cause to arrest the defendant for DUI. The *Motzko* court cited *People v. Day*, 2016 IL App (3d) 150852, ¶¶ 23, 37-38, for the proposition that, absent further corroboration, the odor of alcohol, bloodshot eyes, and slurred speech do not give rise to probable cause that the defendant has committed DUI.[1]

¶ 15      Defendant's reliance on *Motzko* is misplaced. Here, the trial court's determination that there was probable cause to arrest defendant for DUI was not based solely on the odor of alcohol, defendant's slurred speech, and his bloodshot eyes. In addition, defendant improperly proceeded straight through the intersection when the green left-turn arrow came on. Defendant notes that he had no apparent difficulty maneuvering his vehicle. However, even a conviction

---

[1]Actually, the *Day* court did not mention slurred speech in connection with the other two factors (the odor of alcohol and bloodshot eyes). In *Day*, there was conflicting testimony about whether the defendant's speech was slurred. The *Day* court inferred that the trial court resolved the conflict in the defendant's favor. Thus, the *Day* court had no occasion to consider whether probable cause would have existed had the defendant's speech been slurred.

of DUI does not require proof that the defendant "was completely incapacitated by alcohol." *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 29. The prosecution need prove only that the defendant "was impaired by alcohol *** to the extent that it rendered him incapable of driving safely." *Id.* Driving through a red light was evidence that defendant lacked the mental clarity to operate his vehicle safely.

¶ 16 Defendant also contends that his "one instance of 'poor driving' was fully explained by the condition of his vehicle." However, other than defendant's self-serving statements, Michael and Bajak had no reason to believe that defendant's vehicle was not in good working order. As a court from another jurisdiction has observed, "[w]hile [a] defendant may offer innocent explanations for his behavior, that does not prevent the police from acting on their well-founded conclusions." *People v. Daye*, 598 N.Y.S.2d 493, 494 (App. Div. 1993). After all, the assessment of probable cause is based on the totality of the facts, and a reasonably prudent person would be aware of a defendant's incentive to fabricate an innocent explanation in order to avoid arrest and prosecution.

¶ 17 Michael and Bajak also observed defendant swaying. That observation is a factor supporting the trial court's conclusion that there was probable cause to arrest defendant for DUI. *People v. Anderson*, 2013 IL App (2d) 121346, ¶ 25. Furthermore, defendant's refusal to perform field sobriety tests was probative of impairment. See *Tatera*, 2018 IL App (2d) 160207, ¶ 28 (listing defendant's refusal to perform any field sobriety tests among factors contributing to conclusion that evidence was sufficient to sustain defendant's DUI conviction). Although defendant offered an excuse—a football injury—for his refusal to perform tests, we are persuaded that, as in *Daye*, the excuse did not negate probable cause.

¶ 18 We therefore conclude that there was probable cause to arrest defendant for DUI. That conclusion disposes of defendant's argument that the evidence seized during the search of his vehicle should have been suppressed. Under certain circumstances, police may conduct a vehicle search incident to the arrest of a recent occupant. *Arizona v. Gant*, 556 U.S. 332, 351 (2009). Such a search is permissible "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* Defendant does not argue that the passenger compartment of his vehicle was beyond his reach. Nor does he argue that it was unreasonable to believe that the vehicle contained evidence of the offense for which he was arrested. Accordingly, we express no opinion on those issues. Defendant's challenge to the search is based entirely on the proposition that there was no probable cause to arrest him for DUI. Having concluded that defendant's arrest was supported by probable cause, we reject his challenge to the search of his vehicle.

¶ 19 We next consider whether the State proved beyond a reasonable doubt that defendant was guilty of DUI. When a defendant challenges the sufficiency of the evidence to sustain a criminal conviction, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining what inferences to draw, and a reviewing court ordinarily will not substitute its judgment on these matters for that of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000). "A criminal conviction will not be set aside unless the evidence is so improbable or

unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Collins*, 106 Ill. 2d at 261.

¶ 20 As defendant acknowledges, a DUI conviction can be sustained on the basis of the testimony of a single police officer, if that testimony is deemed credible. See, *e.g.*, *People v. Janik*, 127 Ill. 2d 390, 402 (1989). Defendant contends, however, that even in such cases the testimony "is *usually* corroborated by additional evidence." (Emphasis added.) That may be so, but it does not follow that such corroboration is always necessary. In any event, two officers testified at trial, and their testimony was partly corroborated by video recordings from their squad car cameras.

¶ 21 Defendant argues that the indicia of impairment can be explained by defendant's testimony that he was exhausted after a long workday and his evening activities. However, whether to credit that testimony, and what weight to give it, was for the jury to decide. This case is distinguishable from the cases cited by defendant—*People v. Thomas*, 34 Ill. App. 3d 578 (1975), *People v. Schultz*, 10 Ill. App. 3d 602 (1973), and *People v. Clark*, 123 Ill. App. 2d 41 (1970)—in which innocent explanations for signs of intoxication created reasonable doubt. As noted in *Janik*, 127 Ill. 2d at 403, the defendants in *Thomas*, *Schultz*, and *Clark* suffered head injuries. Defendant's claimed exhaustion here is not comparable to the documented head injuries in those cases.

¶ 22 In *People v. Weathersby*, 383 Ill. App. 3d 226 (2008), we affirmed a DUI conviction on the basis of evidence similar to the evidence in this case. In *Weathersby*, the defendant's speech was " 'thick-tongued,' " his eyes were glassy, a three-quarters-empty bottle of malt liquor was found in his vehicle,[2] and his breath smelled of alcohol. *Id.* at 227. The defendant also refused to take a breath test. Defendant contends, however, that the evidence of his guilt was insufficient because he was able to drive his car through the intersection without weaving or jerking, he activated his turn signal, he properly pulled into a parking space, he exited his vehicle without hesitation and without stumbling or falling, and he was able to communicate with Michael and Bajak. Defendant's argument is without merit. A motorist's ability to perform a number of tasks without any indication of impairment does not necessarily create a reasonable doubt in a DUI prosecution. See *Tatera*, 2018 IL App (2d) 160207, ¶ 29 (upholding the defendant's DUI conviction even though he did not hit barricades surrounding a hole in the road, he successfully completed a right turn into traffic, he did not weave out of his lane or cross the fog line, he pulled his car to the side of the road without the car falling into a ditch, he was able to exit his vehicle without assistance, and he did not stumble or otherwise lose his balance). Accordingly, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that defendant was guilty of DUI.

¶ 23 III. CONCLUSION

¶ 24 For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

---

[2]The partially empty bottle was circumstantial evidence that the defendant had been drinking. Here there was direct evidence: defendant's admission that he had consumed several beers.

¶ 25        Affirmed.