2021 IL App (2d) 200265-U
No. 2-20-0265
Order filed March 1, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19-CF-860 |
| EARL ASHTON, | ) ) | Honorable David P. Kliment, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hutchinson and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Probable cause existed to arrest defendant for DUI where (1) the officer responding to a domestic incident was told by defendant's domestic partner that defendant had just recently driven from the home with a bottle of vodka after having consumed alcohol for several hours; and (2) the officers who shortly afterward found defendant in his vehicle at a nearby gas station reported that (a) defendant smelled strongly of alcohol and had bloodshot and glassy eyes, (b) there was an open bottle of vodka in the passenger compartment, and (c) defendant refused to perform field-sobriety tests.

¶ 2    The State appeals from the judgment of the circuit court of Kane County granting defendant, Earl Ashton's, motion to quash arrest and suppress evidence. Because we find that there was probable cause to arrest defendant, we reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was arrested on May 9, 2019, and charged with aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2018)) and domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2018)). Defendant was subsequently indicted on those same offenses along with three additional counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2018)).

¶ 5     Defendant filed a petition to rescind the statutory summary suspension of his driver's license and, following a hearing, the trial court granted defendant's petition, concluding that there was no probable cause to arrest defendant. (The granting of defendant's petition to rescind the summary suspension is not at issue here.)

¶ 6     Defendant subsequently moved to quash his arrest and suppress evidence. At the outset of the hearing on defendant's motion, defense counsel offered to stipulate that the testimony presented would be the same as that presented at the hearing on the petition to rescind and offered a transcript from that hearing. The State declined to stipulate. Thereafter, the following evidence was presented.

¶ 7     Kane County sheriff's deputy Luke Weston testified that, on May 8, 2019, he was dispatched to a Batavia residence at approximately 5:08 p.m. When he arrived, he spoke with "Ms. Walter,"[1] who told Weston that she had had a "physical argument" with defendant. Welter told Weston that defendant pulled her hair, punched her on or about her head, and kicked her. Weston observed that Welter was "missing a chunk of hair in the back of her head" and that she "had

_____

[1] Although referred to in the transcript of the hearing as "Ms. Walter," she is identified in the indictment as "Andrea Welter." We will refer to her as Welter.

bruising on her biceps." Weston further testified that Welter told him that the argument with defendant started over defendant's drinking, when defendant expressed his desire to leave in his vehicle and Welter attempted to take away defendant's keys to prevent him from driving. Welter told Weston that she had observed defendant drinking for five hours before Weston arrived. Weston testified that Welter told him that the argument happened immediately before Weston arrived and that defendant left as Weston was on his way. Weston testified that Welter told him that defendant left in a blue BMW and that the police would find a chunk of her hair and a bottle of vodka in the front passenger seat. Weston reported the BMW to dispatch and, within minutes, learned that the BMW had been located.

¶ 8    Kane County sheriff's deputy Steve Benson arrived at the Batavia residence while Weston was speaking with Welter. Benson testified that he was present for "less than a minute" before leaving to check the area for defendant's vehicle. Benson located defendant in a blue BMW, about three minutes later, at a gas station approximately one mile away. Benson approached the vehicle and saw defendant sitting in the driver's seat. The vehicle was on; the keys were in the ignition; and the driver's side window was down. Benson spoke with defendant. Benson testified: "[Defendant] appeared to have an odor of alcoholic beverage coming from his mouth. His eyes were bloodshot and glassy. I notice he had a—some hair sitting on his lap. And I also saw what appeared to be a vodka bottle in the passenger area." Benson asked defendant to exit the vehicle and as defendant did so, the hair on defendant's lap fell to the ground. After exiting the vehicle, defendant sat down on the sidewalk. When Benson asked defendant how he got to the gas station, defendant told Benson that he had driven there from his residence to get a pack of cigarettes.

¶ 9    Deputy Weston drove to the gas station after speaking with Welter for about ten minutes. Weston testified that, when he arrived at the gas station, defendant had already exited his vehicle

at Benson's direction and was sitting on a curb next to it. Weston observed a chunk of hair near defendant. Weston spoke with defendant, standing about five feet away. From that distance, Weston detected an odor of alcohol on defendant's breath. Weston also observed that defendant "had bloodshot and glassy eyes." Weston asked defendant how he got to the gas station, and defendant told Weston that he had driven there. Weston asked defendant if he had gotten into an argument with Welter. Defendant told Weston that he had gotten into a "verbal argument" with Welter and left. Weston asked defendant if he would submit to field sobriety testing. Defendant refused, and Weston placed him under arrest. After arresting defendant, Weston observed a bottle of Vitali vodka in the front passenger seat of the vehicle; the bottle was not full.

¶ 10    At the close of evidence, the trial court found no probable cause to arrest defendant for DUI, and it granted the motion as to only the DUI count of the indictment. The court stated: "No one who has testified in this courtroom observed him driving. There were no field sobriety tests." The court recognized the testimony that "[t]here was an odor of alcohol" and that "[t]here were bloodshot eyes." However, the court stated: "There was no testimony that he was unsteady on his feet, had trouble or difficulty walking to the area where he was seated apparently for a period of time. There was no evidence of him swaying. No evidence of any physical impairment whatsoever. No mumbled speech." The court also noted that there was no evidence as to whether defendant was asked for his driver's license or whether he had difficulty retrieving it. The court concluded: "Just because he has been drinking and even though he has alcohol in the car, which is in and of itself an offense, that does not mean he was driving while under the influence of alcohol. And I don't think there is anything in the record to show me that there was probable cause to arrest him for that offense."

¶ 11    The State filed a "motion to reconsider court's partial granting of defendant's motion to quash arrest, or, in the alternative, to clarify its ruling." The State argued that (1) the motion was deficient as a matter of law, (2) the trial court's finding of probable cause as to the domestic-violence counts made the question of probable cause as to the DUI count irrelevant and without legal consequence, and (3) the court's finding of a lack of probable cause was manifestly erroneous.

¶ 12    The trial court denied the motion to reconsider and clarified its ruling as follows: "The Court rules that any evidence obtained after the defendant's arrest, evidence recovered from the car, statements made thereafter and the refusal to submit to a breath test are suppressed pursuant to the court's previous ruling."

¶ 13    The State filed a certificate of impairment (see Ill. S. Ct. R. 604(a)(1) (eff. July 1, 2017)) and a timely notice of appeal.

¶ 14                                    II. ANALYSIS

¶ 15    The State advances three arguments on appeal. First, the State argues that defendant's motion to quash his arrest and suppress evidence was "legally insufficient" because it failed to specify the facts showing that the search was unlawful and failed to specify the evidence to be suppressed. Second, the State argues that the trial court's ruling was "legally inconsistent" because it ordered the suppression of evidence even though it found that the officers had probable cause to arrest defendant for domestic battery. Third, defendant argues that the court erred in concluding that the officers lacked probable cause to arrest defendant for DUI.

¶ 16    Defendant has not filed an appellee's brief responding to the State's arguments. Nevertheless, we may address the merits of the appeal, because the record is simple and the claimed errors can be easily decided without the aid of an appellee's brief. See *First Capitol*

*Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976); see also *People v. Marcella*, 2013 IL App (2d) 120585, ¶¶ 23, 36 (deciding under *Talandis* whether undisputed facts established probable cause to detain the defendant).

¶ 17    We address the State's third argument first—whether the trial court erred in finding that Weston lacked probable cause to arrest defendant for DUI. We apply a bifurcated standard of review to a trial court's ruling on a motion to quash arrest and suppress evidence. *People v. Meo*, 2018 IL App (2d) 170135, ¶ 16. We defer to the trial court's findings of fact, reversing them only if they are against the manifest weight of the evidence. *Id.* However, we review *de novo* the court's legal conclusion as to whether suppression was warranted. *Id.*

¶ 18    In considering whether Weston had probable cause to arrest defendant, we keep the following legal principles in mind.

> "Probable cause to arrest exists when the totality of the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime. [Citation.] Probable cause concerns probabilities and not technicalities. [Citation.] That is, probable cause is based on the factual and practical considerations of everyday life upon which reasonable, prudent people, not legal technicians, act. [Citation.] Probable cause is more than a mere suspicion but less than proof beyond a reasonable doubt [citation]." *Id.* ¶ 25.

In addition,

> "[p]robable cause for an arrest may be established on the basis of all the information by the officers working in concert [citations], and even if such knowledge is not told to the arresting officer, it may be considered by the trial court in determining whether there was

probable cause so long as such information was somehow placed in the record." [Citation.] *People v. Fox*, 155 Ill. App. 3d 256, 263-64 (1987).

¶ 19    The elements of DUI under section 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2) (West 2018)) are: (1) the defendant was driving or in actual physical control of the vehicle and (2) the defendant was under the influence of alcohol. There are several pieces of evidence that, when considered in their totality, provided probable cause to arrest defendant for DUI.

¶ 20    We first note that the evidence was sufficient to lead a reasonably prudent person to conclude that defendant was in actual physical control of his vehicle. The issue of actual physical control should be resolved on a case-by-case basis, giving weight to such facts as whether the motorist (1) was in the driver's seat of the vehicle, (2) had possession of the ignition key, (3) was physically capable of operating the vehicle, and (4) was alone in the vehicle with the doors locked. *People v. Kiertowicz*, 2013 IL App (1st) 123271, ¶ 21. "These factors merely provide a guideline to determine whether defendant had actual physical control of the vehicle; the list is neither exhaustive, nor is the absence of one individual factor controlling." *Id.* Here, Benson testified that he located defendant in his vehicle, approximately one mile from the Batavia residence. Benson observed defendant in the driver's seat. The vehicle was on and the keys were in the ignition. When Benson asked defendant how he got to the gas station, defendant told him that he had driven there. Thus, the evidence supported a finding of probable cause on the issue of actual physical control.

¶ 21    The evidence was also sufficient to lead a reasonably prudent person to conclude that defendant was under the influence of alcohol. A person is under the influence of alcohol when he or she is " 'less able, either mentally or physically, or both, to exercise clear judgment, and with steady hands and nerves operate an automobile with safety to himself and to the public.' " *People*

*v. Bostelman*, 325 Ill. App. 3d 22, 34 (2001) (quoting *People v. Seefeldt*, 112 Ill. App. 3d 106, 108 (1983)). A motorist can be under the influence of alcohol without being completely incapacitated. *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 29. A motorist can be able to maintain his or her balance and walk steadily, and yet be too impaired to safely operate a motor vehicle. *Id.*

¶ 22     Common indicia of impairment include the odor of alcohol and red and glassy eyes. *People v. Williams*, 2018 IL App (2d) 160683, ¶ 14. Generally, " 'these observations are supplemented by other observations apparent to the officer or inferred from his observations such as speeding, weaving, erratic driving, driving on the wrong side of the road, being stuck in a ditch [citation] or *** being in a vehicle which is stuck in the mud.' " *Id.* (quoting *People v. Wingren*, 167 Ill. App 3d 313, 321 (1988)). Here, Benson testified that defendant had "an odor of alcoholic beverage coming from his mouth" and that defendant's "eyes were bloodshot and glassy." Weston testified that he too detected an odor of alcohol on defendant's breath and that defendant "had bloodshot and glassy eyes." Indeed, Weston was five feet away from defendant when he smelled the alcohol, which tends to suggest that the odor was strong.

¶ 23     In addition to the strong odor of alcohol and bloodshot and glassy eyes, Benson and Weston also both testified that they observed a bottle of vodka in the passenger area, and Weston testified that the bottle was not full. The partially-filled bottle of vodka is further evidence that defendant was under the influence. See, *e.g.*, *People v. McKown*, 236 Ill. 2d 278, 302 (2010) ("[A]ny evidence of alcohol consumption is relevant to the question of impairment."); *People v. Rush*, 319 Ill. App. 3d 34, 40-41 (2001) (open can of beer in vehicle was factor to consider in determining probable cause to arrest for DUI). Although Weston testified that he observed the bottle after he arrested defendant, Benson testified that he saw the bottle when speaking with defendant prior to asking him to exit the vehicle. As noted, probable cause may be established based on all of the

information obtained by the deputies. Weston also testified that defendant refused to perform field sobriety tests when requested to do so. Defendant's refusal to perform the test was probative of impairment and further supported probable cause to arrest. See *Williams*, 2018 IL App (2d) 160683, ¶ 17; *Meo*, 2018 IL App (2d) 170135, ¶ 28.

¶ 24 Moreover, in addition to the above evidence, Weston was also acting with knowledge of the information provided to him by Welter. According to Weston, Welter told him that defendant had been drinking for five hours prior to Weston's arrival. Welter told Weston that her argument with defendant started over defendant's drinking, when defendant expressed a desire to leave in his vehicle and Welter attempted to take defendant's keys. She did so to prevent defendant from driving due to his extreme intoxication from his having consumed a bottle of vodka over several hours. Welter also told Weston that defendant had a bottle of vodka in the passenger seat. "[H]earsay is a permissible basis for a finding of probable cause." *People v. Gocmen*, 2018 IL 122388, ¶ 43 (in hearing on the defendant's petition to rescind summary suspension, the trial court properly relied on officer's hearsay testimony about information provided to him by paramedics); see also *People v. Macias*, 39 Ill. 2d 208, 213 (1968) (probable cause "may be founded on hearsay evidence" and "is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act"); *People v. Horine*, 2017 IL App (4th) 170128, ¶ 16 (at hearing on the defendant's petition to rescind summary suspension, "the officer's testimony, even if it includes hearsay, is permissible as it provides the court with the necessary information to rule on the petition. Although such testimony may constitute impermissible hearsay at trial, such testimony is permissible in this setting."). Thus, based on what Welter told him, Weston could have reasonably inferred that defendant was too intoxicated to drive safely.

¶ 25    Here, in finding that there was no probable cause to arrest defendant for DUI, the trial court relied on the fact that there was no testimony from anyone who "observed [defendant] driving." However, "[n]o direct evidence that the defendant actually drove a motor vehicle in an erratic or unlawful manner is required either to sustain a defendant's conviction for DUI or to provide probable cause for his arrest for DUI." *People v. Misch*, 213 Ill. App. 3d 939, 942 (1991). The court also relied on the fact that there was no testimony that defendant "was unsteady on his feet, had trouble or difficulty walking" or was "swaying." However, as noted, proof that a motorist was under the influence of alcohol does not require evidence that he or she was incapacitated. *Tatera*, 2018 IL App (2d) 160207, ¶ 29. A motorist can be able to maintain his balance and walk steadily, and yet be too impaired to safely operate a motor vehicle. *Id.* The court also noted that "[t]here were no field sobriety tests." But, as noted, defendant refused to perform the tests, which was a factor probative of impairment.

¶ 26    In sum, defendant's glassy and bloodshot eyes, the strong odor of alcohol on defendant's breath, the open bottle of vodka in the passenger area, defendant's refusal to perform field sobriety tests, and the information obtained from Welter would cause a reasonably cautious person to believe that defendant was impaired. Thus, there was probable cause to arrest defendant for DUI. Given our holding, we need not consider the State's remaining arguments.

¶ 27                                III. CONCLUSION

¶ 28    For the reasons stated, we reverse the judgment of the circuit court of Kane County and remand for further proceedings.

¶ 29    Reversed and remanded.