2022 IL App (2d) 220074-U
No. 2-22-0074
Order filed December 5, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18-CF-923 |
| | ) | |
| MANUEL LOPEZ, | ) ) | Honorable Alice C. Tracy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justice Brennan[1] and Justice Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction of aggravated driving under the influence because (1) although defendant was not completely incapacitated, he was unable to exercise ordinary care as shown by his erratic driving; and (2) defendant's innocent explanations for his indicia of intoxication did not create reasonable doubt.

_____

[1]Justice Brennan participated in this appeal but has since been elected to the Third District Appellate Court.   Our supreme court has held that the departure of a judge prior to the filing date will not affect the validity of a decision so long as the remaining two judges concur.   *Proctor v. Upjohn Co.*, 175 Ill. 2d 394, 396 (1997).

¶ 2    Following a bench trial, defendant, Manuel Lopez, was convicted of aggravated driving while under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2018)) and driving while his driving privileges were revoked (DWLR) (*id.* § 6-303(a)).  He was sentenced to 14 months' imprisonment for aggravated DUI and 56 days in jail for DWLR.  In this timely-filed appeal, defendant argues that he was not proved guilty of aggravated DUI beyond a reasonable doubt.  We disagree.  Thus, we affirm.

¶ 3                              I. BACKGROUND

¶ 4    The evidence at trial consisted of Elgin police officer Michael McCarthy's testimony and video from McCarthy's squad car and body camera.  McCarthy testified that he had 18 years of experience as a police officer and underwent training in 2003 and 2017 for DUI detection.  This training included administering and interpreting the results of the horizontal gaze nystagmus (HGN) test, which McCarthy used in the "vast majority" of stops he made where he suspected a driver might be under the influence.  McCarthy passed proficiency tests following these training sessions.

¶ 5    As a seasoned police officer, McCarthy had participated in 50 to 60 DUI investigations—not all of which led to DUI arrests.  In addition to DUI investigations, McCarthy had observed "[h]undreds" of people under the influence of alcohol in his personal and professional lives.

¶ 6    On May 6, 2018, at 5:49 p.m., McCarthy was on patrol with the Elgin gang unit.  He was driving northwest on Villa Street, approaching the "V" intersection at Villa Street and Sherman Avenue.  Villa Street runs northwest and southeast.  Sherman Avenue starts at Villa Street and runs west.  A few yards northwest of where Sherman Avenue starts, George Street starts at Villa Street and runs south, intersecting with Sherman Avenue.  East of the intersection of George Street and Sherman Avenue is a small triangular traffic island bordered by Villa Street, George

Street, and Sherman Avenue. Drivers on Villa Street can turn south onto George Street or west onto Sherman Avenue. The triangular island separates traffic turning south onto George Street from traffic turning west onto Sherman. At the intersection of Sherman Avenue and George Street, there are stop signs on Sherman Avenue but not on George Street.

¶ 7 As McCarthy was driving, he saw ahead of him a Ford Expedition, also proceeding northwest on Villa Street. A silver minivan was between McCarthy's squad car and the Expedition. There was a fair amount of traffic in both directions on Villa Street.

¶ 8 The Expedition turned west onto Sherman Avenue from Villa Street. The Expedition approached the intersection of Sherman Avenue and George Street, which is only a few yards from Villa Street. McCarthy watched as the Expedition "rolled" through the stop sign on Sherman Avenue. McCarthy elaborated that the Expedition "slowed down" but did not pause or stop. No cars were traveling on George Street when the Expedition rolled through the stop sign, but several cars were parked on both sides of George Street. Fifty yards after rolling through the stop sign, defendant turned north into the parking lot of Villa Liquors. Villa Liquors has limited, though "[s]tandard-sized," parking spaces and a "quite wide" space between the row of parking spaces at the front of the store and another row of parking spaces right off the intersection of Villa Street and George Street. People were entering and exiting the store. Two cars were backing out of parking spaces as the Expedition rolled through the stop sign and drove into the liquor store's parking lot.

¶ 9 The Expedition waited for one of these vehicles to exit their parking space near the store entrance. The Expedition then pulled into that space at a 45-degree angle, almost hitting the adjacent car on the Expedition's driver's side. Once in the parking space, the Expedition stopped only six to eight inches from the adjacent car. McCarthy explained that the Expedition stopped

abruptly and "lifted upwards." Based on what McCarthy observed, he believed that the Expedition's driver might have been impaired.

¶ 10    McCarthy activated his emergency lights and parked his squad car in the parking lot. He approached the Expedition's front driver's side while his partner approached the front passenger side. McCarthy recognized the driver as defendant, with whom McCarthy had prior interactions. Defendant's cousin was in the front passenger's seat. Both front windows were completely down as McCarthy and his partner interacted with defendant and his cousin.

¶ 11    McCarthy asked defendant for his driver's license and insurance. Defendant, who was cooperative and respectful, told McCarthy that his license was suspended and he did not have insurance. While talking with defendant, who had a heavy Spanish accent, McCarthy noticed a "strong odor" of alcohol on defendant's breath. McCarthy also noticed that defendant mumbled, his speech was slightly slurred, and his eyes were red and watery. When McCarthy asked if defendant had been drinking, defendant denied that he had. However, defendant told McCarthy that he had been drinking at a party the day before. McCarthy asked defendant if he would submit to field sobriety testing. Defendant said no.

¶ 12    After the adjacent car on the Expedition's driver's side left her parking space—requiring quite a bit of maneuvering—defendant exited the Expedition at McCarthy's request. Defendant did not need to use the driver's door for assistance in exiting, nor did he stumble or sway. McCarthy asked defendant to walk to the sidewalk in front of Villa Liquors. Defendant did so without any issues. McCarthy observed that defendant's appearance was orderly except that his pants were halfway unzipped.

¶ 13    Once on the sidewalk, McCarthy again noticed that defendant's eyes were watery and red and that his breath still had a "strong odor" of alcohol. McCarthy told defendant that he wanted

to check defendant's eyes. McCarthy then administered the HGN test. Defendant, who told McCarthy that he needed an operation on his right eye, did not successfully complete this test. Specifically, defendant was unable to keep his hands out of his pockets after being told at least four times that his hands had to remain at his sides; he moved his head at least four times (once to the right and at least three times to the left) after being told to keep his head stationary; and he was unable to track McCarthy's finger, as instructed, throughout the test. After defendant failed to complete the HGN test, McCarthy asked if he would submit to other field sobriety tests. Defendant said no. McCarthy then arrested defendant for DUI, as he believed defendant was not fit to operate a motor vehicle.

¶ 14    Defendant was transported to the police station while McCarthy remained at the scene to inventory defendant's vehicle. On the floorboard behind the front passenger seat, McCarthy found "several" open containers of alcohol among other items such as slabs of marble.

¶ 15    Later, McCarthy returned to the police station. McCarthy read defendant the "Warning to Motorists" and observed defendant for 20 minutes. Even with a partition between them, McCarthy still detected a "strong" odor of alcohol on defendant's breath. After 20 minutes passed, approximately 1 to 1½ hours after defendant was stopped, McCarthy asked defendant to submit to a breath test. Defendant refused. McCarthy noticed that defendant's eyes were still red and glassy, he mumbled and slightly slurred his speech, and his breath still smelled strongly of alcohol.

¶ 16    McCarthy advised defendant of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant waived his *Miranda* rights and spoke with McCarthy. After the interview, defendant made a phone call, "crying *** with the person he was speaking to."

¶ 17    McCarthy determined that defendant was under the influence and unfit to operate a motor vehicle.  He based this conclusion on his training and the "totality of the circumstances" he observed.  These observations included defendant's "erratic" driving by rolling through a stop sign and almost hitting a parked car; the strong odor of alcohol on defendant's breath; his mumbling and slightly slurred speech; his red and watery eyes; his inability to complete the HGN test; and his refusal to take other field sobriety tests.  McCarthy agreed that any one of the foregoing observations could be caused by something other than alcohol consumption.  He also recognized that "one individual [observation] in itself isn't necessarily an indicator" of intoxication.

¶ 18    The trial court found defendant guilty of aggravated DUI and DWLR.  In doing so, the court relied on *People v. Williams*, 2018 IL App (2d) 160683, ¶ 15, wherein this court held that the State in a DUI prosecution need only prove beyond a reasonable doubt that the defendant was impaired by alcohol, not that the defendant was completely incapacitated.  The trial court also noted that, as stated in *Williams*, the testimony of a single officer, if credible, can sustain a DUI conviction.  The court then determined that the evidence presented—McCarthy's credible testimony and the videos—established defendant's guilt beyond a reasonable doubt.  Specifically, the court found that defendant's ability to drive was poor given that he rolled through a stop sign and almost struck a parked car.  Also, defendant's eyes were red and watery, he mumbled and slightly slurred his speech, and he could not successfully complete the HGN test.  Moreover, defendant had a strong odor of alcohol on his breath throughout his interaction with McCarthy, yet he denied drinking.  The court found that this denial showed defendant was not truthful.  Similarly, defendant refused to submit to field sobriety tests (other than the HGN test) or a breath test, which the court believed showed consciousness of guilt.

¶ 19    Defendant filed a posttrial motion, arguing, among other things, that the State failed to prove beyond a reasonable doubt that alcohol impaired his ability to drive.   Defendant withdrew this motion, and the parties agreed on sentencing, including consecutive sentencing on an unrelated case.   This timely appeal followed.

¶ 20                                  II. ANALYSIS

¶ 21    On appeal, defendant argues that he was not proven guilty beyond a reasonable doubt of aggravated DUI.   When a defendant challenges on appeal the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   *People v. Patterson*, 314 Ill. App. 3d 962, 968-69 (2000).   "In a bench trial, it is the job of the trial judge, sitting as the factfinder, to make determinations about witness credibility."   *People v. Williams*, 2013 IL App (1st) 111116, ¶ 76.   Those credibility determinations are entitled to great deference and will rarely be disturbed on appeal.   *Id.*

¶ 22    In assessing whether a defendant was proven guilty beyond a reasonable doubt, we need not engage in a "point-by-point discussion of every piece of evidence as well as every possible inference that could be drawn therefrom."   *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007).   "To engage in such an activity would effectively amount to a retrial on appeal, an improper task expressly inconsistent with past precedent."   *Id.*   Moreover, we will neither disregard inferences that normally flow from the evidence nor search out all possible explanations consistent with a defendant's innocence and raise them to the level of reasonable doubt.   *Id.*   Rather, we will reverse a defendant's conviction only if the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt.   *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 23    As noted, defendant argues that he was not proven guilty beyond a reasonable doubt of aggravated DUI. To prove defendant guilty of aggravated DUI, the State needed to establish beyond a reasonable doubt that defendant (1) was in physical control of a motor vehicle, (2) without a valid driver's license or legal permit, and (3) while under the influence of alcohol. See 625 ILCS 5/11-501(d)(1)(H) (West 2018). Defendant does not deny that he was driving and did not have a valid driver's license or permit. However, defendant does argue that the State failed to prove beyond a reasonable doubt the third element, *i.e.*, he was under the influence of alcohol.

¶ 24    To prove that defendant was under the influence of alcohol, the State had to establish that, as a result of consuming alcohol, the defendant could neither think nor act with ordinary care. *People v. Diaz*, 377 Ill. App. 3d 339, 344 (2007). Whether a defendant was under the influence presents a question of fact for the factfinder to resolve. *People v. Janikas*, 127 Ill. 2d 390, 401 (1989).

¶ 25    Here, we determine that defendant was driving while under the influence of alcohol. That is, the evidence established beyond a reasonable doubt that, because of alcohol consumption, defendant could neither think nor act with ordinary care. Although there was evidence perhaps suggesting that defendant was not impaired—*e.g.*, he was cooperative, McCarthy was able to understand him, and he had no issues exiting his vehicle or walking and standing in front of the liquor store—other evidence suggested otherwise. Specifically, (1) defendant's driving was erratic, (2) his breath smelled strongly of alcohol for 90 minutes after he was stopped, (3) his eyes were red and watery, (4) he mumbled and slightly slurred his speech, and (5) he could not complete

the HGN test.[2]  Given the credible evidence that defendant was impaired and our deferential standard of review, we conclude that a rational trier of fact could have determined beyond a reasonable doubt that defendant was under the influence and unfit to drive.

¶ 26      *Williams* supports our conclusion.   At issue in *Williams* was, among other things, whether the indicia of intoxication the defendant exhibited was sufficient to prove beyond a reasonable doubt that the defendant's driving was impaired by alcohol.   *Williams*, 2018 IL App (2d) 160683, ¶ 22.   That indicia included that the defendant drove poorly; he smelled of alcohol; his eyes were bloodshot, glassy, red, and watery; he swayed while standing; he admitted consuming four beers several hours before he was stopped; and he refused to submit to field sobriety tests.   *Id.* ¶¶ 3-4. We concluded that this evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt.   In doing so, we acknowledged that defendant was able to do several things proficiently, *e.g.*, "he was able to drive his car through the intersection without weaving or jerking, he activated his turn signal, he properly pulled into a parking space, he exited his vehicle without hesitation and without stumbling or falling, and he was able to communicate with [the officers]."   *Id.* ¶ 22. We further acknowledged that the indicia of intoxication might have had innocent explanations, *e.g.*, defendant's exhaustion, consumption of little food over the previous few hours, and a malfunctioning vehicle.   *Id.* ¶¶ 5, 8-9, 21-22.   We also noted that the defendant cited a football injury as his reason for refusing to take field sobriety tests.   *Id.* ¶ 17.   Nevertheless, we affirmed

---

[2]The parties address whether an inference of intoxication can be drawn from the facts that open containers of alcohol were found in defendant's vehicle and defendant was crying when talking on the phone at the police station.   In the totality of the circumstances here, we find neither fact material in assessing whether defendant was under the influence.

the defendant's conviction, observing: (1) proof of intoxication does not require proof of complete incapacitation, (2) weighing the evidence of intoxication against the defendant's plausible explanations was for the trier of fact, and (3) the evidence of intoxication was not so implausible or unsatisfactory that it raised a reasonable doubt of the defendant's guilt. *Id.* ¶ 19, 21-22.

¶ 27    So too here. The trial court, as the trier of fact, weighed the evidence of intoxication against defendant's plausible explanations and found that defendant was under the influence of alcohol. That evidence may not have shown complete incapacitation, but it was sufficient to establish defendant's guilt of aggravated DUI beyond a reasonable doubt.

¶ 28    Defendant claims that *Williams* is not persuasive because the defendant in *Williams* admitted drinking four beers while defendant here denied drinking. We find that difference immaterial. There were indicia of intoxication presented here that were absent or explained in *Williams*. But, more importantly, any appellate challenge to the sufficiency of the evidence in a DUI case must be considered in light of its own unique facts and circumstances. See *People v. Norris*, 399 Ill. App. 3d 525, 530 (2010) (in every reasonable doubt case, the trier of fact considers unique facts and circumstances presented).

¶ 29    Defendant also argues that the evidence here "showed simply that [defendant] may have at some point consumed alcohol, rather than that he was mentally or physically impaired by it." Defendant's argument is misguided. The fact that defendant was not, colloquially, "falling-down drunk," means nothing. There is a continuum of impairment. Both the defendant in *Williams* and defendant here were not completely incapacitated, yet the evidence did not "show[ ] simply" that they had consumed alcohol. Rather, in both cases, alcohol consumption created an inability to exercise ordinary care.

¶ 30 Finally, we note that defendant's general approach on appeal is to consider the evidence piecemeal and include every reasonable hypothesis consistent with defendant's innocence. Aside from claiming that the videos do not support McCarthy's testimony or the trial court's findings, defendant claims that his need for eye surgery, his heavy Spanish accent, and his admission to drinking the day before he was stopped explain why his eyes were red and watery, his speech was not as clear as it could be, and he smelled of alcohol. Defendant also contends that the fact that he refused to take any field sobriety tests "does not by itself necessarily prove that he was impaired, and certainly does not itself constitute proof of [impairment] beyond a reasonable doubt." Moreover, defendant notes that even sober drivers roll through stop signs and park poorly. Defendant further observes that, "[w]hile failing to come to a complete stop at the sign was improper, it was not necessarily unsafe given the absence of other cars." "And, even though [he] parked in a swift and crooked manner, [he] ultimately did not strike the adjacent vehicle or any other vehicle."

¶ 31 We find defendant's arguments unpersuasive, if not preposterous. Only by God's grace was no one harmed when defendant rolled through the stop sign at Sherman Avenue and George Street. People and cars were moving about in the area; traffic on Villa Street could have easily turned onto George Street and, within seconds, legally entered the intersection of Sherman Avenue and George Street without stopping—to hit or be hit by defendant's vehicle. Similarly, although defendant did not hit the car next to him while parking, he easily could have hit it, other cars, or more importantly, people entering and exiting the store. All this aside, defendant is essentially asking us to do what we cannot, *i.e.*, engage in a "point-by-point discussion of every piece of evidence"—searching out innocent explanations for McCarthy's observations and raising them to a level of reasonable doubt. *Wheeler*, 226 Ill. 2d at 117.

¶ 32                                   III. CONCLUSION

¶ 33    For these reasons, we affirm the judgment of the circuit court of Kane County.

¶ 34    Affirmed.